848 F.2d 190
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GENERAL FOODS CORPORATION, Plaintiff-Appellant
v.
UNITED CEREAL, BAKERY AND FOOD WORKERS, LOCAL 374 OF the
UNITED RETAIL, WHOLESALE AND DEPARTMENT STORE
UNION, AFL-CIO-CLC, Defendants-Appellees
 No. 87-1649.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1988.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 General Foods Corporation appeals the district court's refusal to vacate an arbitration award which had been rendered in favor of the United Cereal, Bakery & Food Workers, Local 374 of the United Retail, Wholesale and Department Store Union, AFL-CIO-CLC. We affirm.
 
 
 2
 General Foods operates a Post cereals plant in Battle Creek, Michigan, where it employs more than 1,000 workers. These hourly-employees have been represented by the union since 1942.
 
 
 3
 In May 1985, General Foods leased the Sage Warehouse, a warehouse located about six miles from the main plant. Sage Warehouse is located in Springfield, Michigan, a city surrounded by Battle Creek. General Foods leased this facility because its storage facilities at the main plant were inadequate for a new brand of cereal. Shortly before the company signed the lease, it met with union officials to discuss certain aspects of the Sage Warehouse operation. Specifically, General Foods asked the union to treat the truck runs between the plant and the Sage Warehouse as "on-site" runs as opposed to "over-the-road" trucking. The union assented.
 
 
 4
 The union subsequently learned, however, that the warehousing work to be performed at the Sage Warehouse would not be performed by bargaining-unit employees. Rather, the work would be performed by individuals employed by the owner of the warehouse. Prior to this development, if the company needed to subcontract work, the union often consented if the work was of a type not usually performed by the bargaining unit or if it was work the bargaining unit could not perform. Here, however, the warehousing work was virtually identical to work being performed by bargaining-unit employees at the plant. Moreover, in the past, when General Foods leased off-site warehouse facilities, the warehouse was generally crewed by bargaining-unit employees.
 
 
 5
 Once the union realized that the company was not going to use bargaining-unit employees at the Sage Warehouse, it filed a grievance. During subsequent negotiations, the company conceded that its decision was motivated by cost savings, but the parties were unable to resolve their dispute. Therefore, the matter was submitted to arbitration.
 
 
 6
 The collective bargaining agreement at issue was in effect from November 1, 1983 until November 1, 1986. The introduction to the agreement identified General Foods as "a Delaware corporation having a place of business at No. 175 Cliff Street, Battle Creek, Michigan." This same section states that the agreement's purpose is "to maintain harmonious industrial relations at the Company's operations at Battle Creek, Michigan." The agreement defines the term "Plant" as "the Company's Post Plant and the Carton & Container Plant at Battle Creek, Michigan." The agreement defines "Employees" as "all regular hourly-paid employees at the Plant." Section 2 of the agreement, the "Union Recognition and Non-Discrimination" clause, restricts the scope of the agreement to such "employees."
 
 
 7
 Section 7, the "Management Rights" clause, provides:
 
 
 8
 The Company has the exclusive right under this Agreement to manage its business, operate the Plant, and direct the workforce, including but not limited to, the right to hire, discharge, demote, lay-off or retire employees, discontinue, consolidate and modify existing jobs, to establish new jobs, and rates therefor, to discontinue any part of its operation and to adopt and enforce reasonable Plant rules governing the conduct of employees. Such rights shall in no event be so exercised as to infringe on the rights of the Union or of employees under specific provisions of this Agreement.
 
 
 9
 Only two provisions deal explicitly with subcontracting: Supplementary Agreement No. 21 lists specific situations in which General Foods may contract outside the plant for construction or major repair work, and Supplementary Agreement No. 25 deals with outside contracting of mechanical work. No provision expressly prohibits the subcontracting of warehouse work.
 
 
 10
 The arbitrator held that General Foods violated the agreement by assigning the Sage Warehouse work to non-bargaining unit employees. He concluded that the Sage Warehouse was a fully-integrated extension of the main plant because he found that past experience demonstrated that the term "plant" was not restricted to facilities located solely at 175 Cliff St. in Battle Creek, Michigan. Therefore, he reasoned, the company breached the contract's recognition clause. The arbitrator also concluded that, even if the Sage Warehouse operation were deemed to be subcontracting, the company violated the agreement because the "management rights" provision did not expressly permit subcontracting and because the two supplemental agreements were essentially exceptions to the agreement's "general policy against subcontracting." Finally, the arbitrator held that the company's failure to assign bargaining unit employees to the Sage Warehouse and its failure to discuss its intentions with the union constituted violations of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. Sec. 158.
 
 
 11
 As a remedy, the arbitrator instructed General Foods to assign bargaining unit employees to the Sage Warehouse. The compensatory award included lost wages, overtime pay, and fringe benefits for all affected employees.
 
 
 12
 In addition to filing the grievance which led to the arbitration, the union had filed an unfair labor practice charge with the National Labor Relations Board. The Board, however, declined to issue a complaint, deferring to the arbitration proceeding because it appeared "probable" that the resolution of the contract dispute would resolve the underlying unfair labor practice issues. About two weeks after the arbitration award was rendered, the Board concluded that the union's charges were considered and decided by the arbitration. Therefore, the Board issued an order requiring the parties to "show cause" why the charge should not be dismissed because the issues had been resolved.
 
 
 13
 General Foods responded shortly thereafter, sending a letter to the Board expressing its position that the arbitrator exceeded and abused his authority in rendering the award. The letter also stated, "[i]n as much as the federal district court is the proper forum for addressing such issues (and not the NLRB), we will be moving in federal district court to vacate the Award." The Board subsequently declined to issue a complaint, and General Foods filed this action.
 
 
 14
 The district court, however, refused to vacate the arbitrator's award. The court concluded that it was bound to enforce the award "[b]ecause the award draws its essence from the collective bargaining agreement." The court also concluded that it was "clear from the record that the unfair labor charge was submitted, considered and decided by the arbitrator." We believe the district court properly deferred to the arbitrator's decision.
 
 
 15
 Under the Steelworkers Trilogy, a federal court's power to review an arbitrator's decision is very limited. See United Steelworkers v. American Manufacturing Co., 363 U.S. 564 (1960); United Steelworkers v. American Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). We are bound to uphold an arbitrator's award as " 'long as it draws its essence from the collective bargaining agreement.' " National Gypsum Co. v. United Steelworkers, 793 F.2d 759, 766 (6th Cir.1986), quoting United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597.
 
 
 16
 General Foods advances two arguments to support its contention that the award should be vacated because it does not draw its essence from the collective bargaining agreement. First, the company contends that the clear, unambiguous terms of the agreement limit its application to the main plant and to workers at that location. Therefore, the company claims, the arbitrator exceeded his authority when he ignored this language and extended the agreement to include the Sage Warehouse. Second, General Foods argues that the arbitrator substituted his own brand of industrial justice when he concluded that the agreement restricted the company's right to subcontract warehouse work.
 
 
 17
 We are not persuaded; with respect to both issues, we believe the arbitrator adopted a permissible interpretation of the agreement. In the context of this dispute, the arbitrator could plausibly conclude that the Sage Warehouse was a fully-integrated extension of the company's operations in Battle Creek. Similarly, after reviewing the company's past practices under this agreement, the arbitrator could plausibly conclude that the agreement did not guarantee the company an unfettered right to subcontract bargaining-unit work without bargaining with the union.
 
 
 18
 In essence, we reject General Foods' contention that the arbitrator gave the union more than that for which the parties had bargained. Quite the contrary, the agreement clearly provides that such disputes are to be submitted to arbitration. By agreeing to arbitration, General Foods has bargained for an arbitrator's interpretation of the agreement. The company may not now avoid that interpretation merely because it dislikes the result. Moreover, we cannot vacate the award simply because General Foods has advanced what it believes to be a better interpretation of the contract for, as the Supreme Court recently stated, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers International Union, AFL-CIO v. Misco, Inc., 108 U.S. 364, 98 L.Ed.2d 286, 299 (1987).
 
 
 19
 Finally, we also reject the company's claim that the arbitrator exceeded his authority by resolving federal labor law issues which, according to the company, were not submitted for his decision. In order to overcome the presumption that the award is within the submission, General Foods must show that the arbitrator "clearly exceeded the scope of the submission." National Gypsum Co. v. United Steelworkers, supra, 793 F.2d at 765. The record, however, does not support the company's position: the Board's initial deference to the arbitration proceeding was proper, and the labor law issues were raised by the parties and considered and decided by the arbitrator. Moreover, General Foods' response to the Board's "show cause" order clearly evidences its intention to raise all of its challenges to the arbitration award in federal court. Therefore, we must uphold the arbitration award in its entirety.
 
 
 20
 Accordingly, we hereby affirm the district court's decision to enforce the arbitration award.[1]
 
 
 
 [1]
 In its brief, General Foods suggested that the district court's decision should be scrutinized more carefully because that court had previously been reversed on appeal. Those prior dispositions are irrelevant to this dispute. Moreover, such thinly-veiled criticism is unpersuasive and inappropriate