861 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The JOSEPH & FEISS COMPANY, Plaintiff-Appellant,
v.
AMALGAMATED CLOTHING & TEXTILE WORKERS UNION OF AMERICA,
AFL-CIO-CLC; Cleveland Joint Board of the
Amalgamated Clothing & Textile Workers
Union AFL- CIO-CLC,
Defendants-Appellees.
 No. 87-3832.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1988.
 
 Before KEITH, NATHANIEL R. JONES and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant appeals from the district court's order granting summary judgment in favor of the defendants-appellees in this action to vacate a labor arbitration award. Because we conclude that the arbitrator's award is not clearly outside the scope of his contractual authority, we affirm the district court's judgment.
 
 I.
 
 2
 The plaintiff-appellant, The Joseph & Feiss Company ("J & F"), operates a plant in Cleveland, Ohio which manufactures tailored clothing. Under J & F's compensation system, certain employees are paid on an incentive or "piece" rate which is based on the number of pieces that they produce. Employees who work on a piece rate basis receive coupons for each piece that they produce. At the end of the week, the employee turns in her coupons and receives a check based on the number and value of those coupons.
 
 
 3
 Frances Hayda, a sewbar operator who had worked for J & F since the mid-1960's, was compensated under the piece rate system. Sometime in the fall of 1985, Hayda complained to her supervisor at J & F that her work assignments were discriminatory because they included a disproportionately high number of small-size fabric bundles. Hayda asserted that it was generally more difficult to work on small bundles than on larger bundles, and that her productivity and pay suffered because of the alleged discriminatory work assignments. Although Hayda applied for a transfer to a non-piece work job, her application was rejected.
 
 
 4
 In mid-February 1986, Hayda began to manipulate her weekly earnings by withholding coupons obtained in one week and presenting them for payment in the following week. By doing this, Hayda was able to collect unemployment benefits for the weeks in which she withheld coupons. While it is unclear from the record exactly how long Hayda engaged in this conduct, she appears to have collected and retained unemployment benefits for at least three weeks when she was working full time at J & F. When J & F discovered Hayda's actions and confronted her about them, she admitted that she had withheld coupons and obtained unemployment benefits in certain weeks. Hayda stated, however, that she did not believe that her conduct was wrongful.
 
 
 5
 On April 24, 1986, J & F discharged Hayda on the ground that she violated certain company rules by manipulating her coupons so as to "qualify" for unemployment benefits. One of the provisions which Hayda was charged to have violated stated that:
 
 
 6
 Major offenses are any willful or deliberate violations of Company rules of such a degree that continued employment of the individual may not be desirable. The following are examples of some offenses which may subject an employee to immediate discharge without warning:
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 4. Willfully falsifying any Company records.
 
 
 10
 J.App. at 51 (emphasis added). The second work rule which Hayda was charged with violating stated that:
 
 
 11
 The following are some general rules of the Company which can result in immediate discharge or other disciplinary action. This must not be construed to be a complete list of offenses for which disciplinary action can be taken.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 11. Falsification of any Company records.
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 14. Stealing, cheating on tickets and poor quality, etc.
 
 
 18
 Id. (emphasis added).
 
 
 19
 Hayda filed a grievance challenging her discharge which proceeded to binding arbitration pursuant to the collective bargaining agreement between J & F and her union, the Amalgamated Clothing and Textile Workers Union of America, AFL-CIO-CLC ("the Union"). On November 13, 1986, the arbitrator issued his decision granting Hayda's grievance and directing J & F to reinstate her without loss of seniority, but with no backpay. The arbitrator found that Hayda had "falsified" company records, within the meaning of the pertinent work rules, by manipulating her coupons in order to obtain unemployment benefits. Id. at 86. However, while finding that "there is no issue in this case concerning [Hayda's] guilt," the arbitrator nevertheless concluded that J & F did not have "just cause" to discharge her, as required by the collective bargaining agreement. See id. at 102. In making the latter determination, the arbitrator relied in part upon Hayda's twenty-year record of employment with J & F without any disciplinary problems. Id. at 86-87. The arbitrator also found that she did not deliberately take her "wrongful action" as revenge for J & F's rejection of her transfer application, and determined that she "should be given one final opportunity to continue her employment with honest and conscientious effort." Id. at 87.
 
 
 20
 On November 28, 1986, J & F filed its complaint in the United States District Court for the Northern District of Ohio seeking to have the arbitrator's award vacated and set aside. In its complaint, J & F asserted that the arbitrator exceeded his authority by reducing the penalty for Hayda's proven violations of work rules. J & F also alleged that the arbitrator's award impinged upon its right to issue and enforce work rules and, therefore, did not draw its essence from the collective bargaining agreement.
 
 
 21
 On August 17, 1987, after the parties filed cross-motions for summary judgment, United States District Judge Ann Aldrich filed a memorandum opinion and order granting the Union's motion and dismissing J & F's complaint. The district court noted that "[i]f there is no ambiguity in the standards for dismissal, then once the arbitrator has found the grievant guilty, he must impose the punishment bargained for in the contract." Id. at 53. However, the court stated that "where the punishment is not automatic, the arbitrator may decide whether the dismissal ... was for just cause, and if not, reinstate the fired worker." Id. After discussing several Sixth Circuit cases presenting similar factual circumstances, the district court concluded that the arbitrator possessed the authority to determine whether Hayda's discharge was for "just cause" because the pertinent work rules did not mandate discharge as the punishment for Hayda's conduct. In addition, addressing an argument raised in J & F's memorandum in support of its summary judgment motion, the district court found that the arbitrator's award was not contrary to public policy. Without addressing J & F's contention that Hayda's conduct violated Ohio law, the district court concluded that the circumstances of Hayda's dismissal, her unblemished record and her reputation for honesty militated against a finding that the award violated public policy.
 
 
 22
 J & F timely brought an appeal from the district court's judgment.
 
 II.
 
 23
 We first address J & F's argument that the arbitrator's award was outside the scope of his authority under the collective bargaining agreement.
 
 
 24
 In considering the propriety of the arbitrator's award, we are mindful of our limited scope of review. As the Supreme Court has made clear, this court may not overrule the arbitrator's decision simply because we believe our own interpretation of the contract would be the better one. W.R. Grace v. Rubber Workers, 461 U.S. 757, 764 (1983). Rather, unless the award does not "draw its essence from the collective bargaining agreement," we are bound to enforce the award and are not entitled to review the merits of the contract dispute. Id. Recently, the Supreme Court has admonished further that "[t]he courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of a contract." United Paperworkers International Union v. Misco, Inc., 108 S.Ct. 364, 370 (1987). Moreover, although an award "cannot simply reflect the arbitrator's own notions of industrial justice ... as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that [we are] convinced he committed serious error does not suffice to overturn his decision." Id. at 371 (emphasis added).
 
 
 25
 J & F relies on several Sixth Circuit cases decided prior to Misco in urging this court to reject the district court's distinction between mandatory and permissive penalties in work rules. While these cases appear to support the construction of the contract and work rules that is urged by J & F, we are constrained to adhere to the guidelines set forth by the Supreme Court in Misco. Since, in our view, the arbitrator arguably was applying the contract in reinstating Hayda to her former position, and since he properly brought his "informed judgment to bear in order to reach a fair solution" of this labor grievance, Misco, 108 S.Ct. at 372, we hold that he did not act outside the scope of his contractual authority.
 
 III.
 
 26
 In its next argument, J & F contends that the district court erred in upholding the arbitration award because the award violates public policy. J & F argues that the award violates the public policy reflected in Ohio Rev.Code Ann. Sec. 4141.35(A) (Baldwin 1971) which prohibits an applicant seeking unemployment compensation benefits from making fraudulent misrepresentations "with the object of obtaining benefits to which [she] was not entitled." J & F also relies upon Ohio Rev.Code Secs. 4141.29(D)(2)(d), 4141.35(A)(3), 4141.40 and 4141.99(d) (Baldwin 1971), which render an applicant committing such fraud ineligible for benefits and subject such an individual to civil restitution and penal fines.
 
 
 27
 In W.R. Grace & Co. v. Rubber Workers, supra, and United Paperworkers v. Misco, Inc., supra, the Supreme Court made clear that a court may not enforce a collective bargaining agreement that is contrary to public policy. The Supreme Court cautioned, however, that a court's refusal to enforce an arbitrator's interpretation of such a contract is "limited to situations where the contract as interpreted would violate 'some explicit public policy' that is 'well defined and dominant, and ... ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " Misco, 108 S.Ct. at 373 (quoting W.R. Grace, 461 U.S. at 766) (emphasis added). The Misco Court further admonished that "[a]t the very least, an alleged public policy must be properly framed under the approach set out in W.R. Grace, and the violation of such a policy must be clearly shown if an award is not to be enforced." Id. at 373-74 (emphasis added).
 
 
 28
 In the instant case, while J & F may have identified a public policy that is implicated by Hayda's conduct, J & F has not shown that the arbitrator's award itself violates this policy. Since the statutory provisions relied upon by J & F provide specific penalties for violations of their substantive terms, we do not believe that the arbitrator's award of reinstatement conflicts with any public policies which might be reflected in the above-referenced Ohio statutes. Therefore, without considering any possible impact of Hayda's prior record at J & F, we agree with the district court's determination that the contract as interpreted did not violate public policy under the standards set forth in W.R. Grace and Misco.
 
 IV.
 
 29
 For the reasons set forth above, we hereby AFFIRM the judgment of the district court.