900 F.2d 261
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED TEXTILE WORKERS OF AMERICA, AFL-CIO, CLC and its
subordinate Local 815, Plaintiffs-Appellants,
v.
BASF CORPORATION-FIBERS, Defendant-Appellee.
 No. 89-5721.
 United States Court of Appeals, Sixth Circuit.
 April 18, 1990.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and DOUGLAS W. HILLMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 United Textile Workers of America ("UTWA") appeals the district court's order vacating the arbitrator's award in this labor dispute, and granting summary judgment for BASF Corporation ("BASF"). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 UTWA and its subordinate, Local Union No. 815, is the duly certified collective bargaining agent for all production and maintenance employees at BASF's manufacturing facility at Lowland, Tennessee. On January 15, 1986, UTWA and BASF entered into a Collective Bargaining Agreement ("CBA"). The CBA contained a section entitled "Appendix B, Maintenance Multi-Craft Agreement" ("MMA") which stated in pertinent part:
 
 
 3
 "All crafts people shall be included in this understanding and may be assigned to any job duty which in the opinion of Maintenance supervision, they are qualified to perform, regardless of primary craft or traditional craft lines; and these craftspeople shall be reclassified as "Mechanical Mechanics," "Power Mechanics," or "Building Mechanics." Employees skilled in one craft may be trained, during regular working hours, to perform other craft work. The Company does not intend to assign any craftsperson to a job they cannot safely perform. The Union agrees that it will encourage the craftspeople, individually and collectively, to learn multi-craft skills and to perform multi-craft assignments to the best of their abilities.
 
 
 4
 J.App. at 52.
 
 
 5
 Primary craft lines within each seniority group will be maintained for the purpose of vacation scheduling, transfers, and layoffs. For the purposes of overtime distribution only, each Maintenance Department bargaining unit employee's name will be placed in a "primary craft group overtime distribution roster." Procedure for distributing overtime in an equitable manner will remain in effect with the supervisor responsible for having the craft skills available to complete the assignments.
 
 
 6
 UTWA Brief at 5.
 
 
 7
 Exhibit A-1 of the CBA also provides a listing of all Maintenance trade positions under three headings--Mechanical Mechanic, Power Mechanic, and Building Mechanic.[1]
 
 
 8
 Before the MMA was entered into, a craftsperson from one primary craft could not perform the duties of another primary craft, except for minor tasks incidental to the performance of an employee's primary work. The Local Union's negotiating committee opposed the inclusion of the MMA into the collective bargaining agreement. Nonetheless, on January 11, 1986, on the eve of a strike vote, the general members of the Local accepted the MMA.
 
 
 9
 The grievance in the instant case arose when Paul Allen, a day shift power mechanic whose primary craft was that of electrician, was assigned to assist a mechanical mechanic in installing a steam valve. Steam valve installation work was traditionally performed by pipefitters, and prior to the acceptance of the MMA an electrician would not have crossed craft lines to assist in pipefitter work. Allen filed a grievance over his assignment to help the Mechanical Mechanic install the steam valve. Allen's case was heard by Arbitrator Jedel, who ruled in favor of Allen and UTWA. The arbitrator determined that the CBA Exhibit A-1 created an ambiguity as to provision one of the MMA. The Arbitrator reasoned that the three column table listing three classes of mechanics served to qualify the language of provision one of the MMA, thereby specifying that work done by one craft could be performed by another craft only if both crafts belonged to the same class of mechanics. Arbitrator Jedel stated:
 
 
 10
 ... [I]n this case, there is new contract language, proposed by the Employer, which is at issue here. In this case Management has sought to change the status quo, not merely to act under what already was a right accorded them. There is no question that the issue involves the changes sought by Management, and whether the Employer's or Union's version is proper of what the language in the new Agreement was to mean. Under this circumstance, and in light of the negotiating history which gave rise to this new language, I must conclude it is the Employer in this case who had the proper responsibility to demonstrate that the language means what they are now claiming. From my review of this record, I must conclude Management has not done so.
 
 
 11
 The evidence in this case is clear and convincing that, at best, there was very limited discussion of Management's proposal on the multi-craft agreement. Union witnesses Gentry and Brady were firm in their testimony that Management spokespeople never said they intended for craftspeople in one (1) of the three maintenance trades (i.e. Mechanical Mechanic, Power Mechanic, Building Mechanic) to do the primary work in another trade, just to do secondary work to expedite completion of their job. Multi-craft arrangements were to avoid the extensive reliance on each other's craft for each operation, but the Company proposal called for the three lines to be established, and crafts in one were not mentioned as doing the primary job of crafts in another line. The Union witnesses also were quite clear in their testimony about the absence of any examples of crafts crossing the lines to do primary work of another craft.
 
 
 12
 While Management's representatives claimed the multi-craft agreement was of such significance to them they were prepared to take a strike over it, they could furnish no notes of their handling of the matter in negotiations, or the examples they utilized. The Employer's witnesses could not recall the length of the bargaining session(s) or the amount of time devoted to this subject, and were vague in their recollection of the illustrations they claim were provided to show their intent to utilize the crafts on any job they wished as long as they wanted. Nor did any Management witness satisfactorily explain the reason for the three column approach in their multi-craft proposal.
 
 
 13
 J.App. p. 17-19.
 
 
 14
 Judge Hull found that the arbitrator had ignored the plain language of the MMA, and vacated the award. This timely appeal followed.
 
 II.
 
 15
 In reviewing an arbitrator's decision, courts must defer to the arbitrator if the arbitrator is even arguably construing the contract. However, an arbitrator may not ignore the plain language of the contract in arriving at a decision. United Paperworkers Inter. Union v. Misco, Inc., 108 S.Ct. 364, 370-71, 484 U.S. 29 (1987). The UTWA claims that the district court substituted its own judgment for that of the arbitrator by failing to defer to arbitrator's conclusion that an ambiguity existed in the CBA, and that the ambiguity should be resolved in favor of the union. The UTWA argues that the arbitrator properly interpreted the MMA as modified by Exhibit A-1 as meaning that craftspeople will work outside of their classification only within the vertical grouping of Building, Power and Mechanical Mechanics, regardless of the language to the contrary in the MMA, no employee will be assigned work outside of his classification. The District Court denied the UTWA's motion for a preliminary injunction to enforce the arbitrator's award stating:
 
 
 16
 "in the case at bar the arbitrator did not construe the terms of the contract in regard to Appendix B ..., but instead set them aside and substituted his belief as to what those terms should have been."
 
 
 17
 J.App. at 52 (quoting order denying preliminary injunction at 33). Furthermore, in the memorandum and order vacating the arbitrator's award, Judge Hull determined that the arbitrator ignored the plain language of the MMA. Judge Hull found that the MMA established two matters--first that all craftspeople can be assigned to any job which maintenance supervision believes they are qualified to perform; and, second, that crafts people are classified as either mechanical, power or building mechanics. He also found that Exhibit A-1 merely establishes the procedure for awarding overtime hours equitably among all crafts. The court stated:
 
 
 18
 There is no rational basis for this finding by the arbitrator. If anything, it is far more rational to conclude that the three lists of crafts found in Exhibit A-1 relate to provision two by clarifying which trades are included in the newly created classes of mechanics. Moreover, the plain and ordinary meaning of the language used in provision one flatly contradicts the arbitrator's conclusion that craftspeople cannot "cross lines between Mechanical Mechanic, Power Mechanic, and Building Mechanic." In sum, the arbitral decision does not draw its essence from the bargaining agreement between BASF and UTW.
 
 
 19
 J.App. at 53.
 
 
 20
 Even under the expanded deference due to arbitration awards under Misco, an arbitrator is not permitted to ignore the plain language of the CBA and dispense his own brand of industrial justice. Misco, 108 S.Ct. at 371. It is clear from the UTWA's brief that the arbitrator's award in part reinstated plant practices in existence before the MMA was adopted, in ruling that the plain language of the key provision of the MMA cannot mean what it says. It appears that UTWA attempted to accomplish through arbitration what it could not get its membership to do--reject the explicit meaning of the MMA. Judge Hull recognized that if he upheld the arbitrator's award by interpreting provision one of the MMA as the UTWA urged him to do, he would in effect negate the adoption of the MMA and correct the loss suffered by the Union at the bargaining table. This the court refused to do. It is illogical to believe both that the MMA was a hotly disputed issue during contract negotiation and that the UTWA's interpretation before the court is the correct reading of the agreement. We therefore hold that the district court correctly concluded that the arbitrator's opinion ignored the plain language of the CBA and supplanted the MMA with extrinsic observations of what such provisions meant historically.
 
 III.
 
 21
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 *
 Honorable Douglas W. Hillman, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 Exhibit A-1 reads as follows:
 Maintenance Trade
 Mechanical Mechanic Power Mechanic Building
 Mechanic
1. Milwright 1. Electrician 1. Building
 Mechanic
2. Pipe fitter 2. Instrument 2. Carpenter
 Technician
3. Welder 3. Shift Electrician 3. Heavy
 Equip.
 Oper.
4. Insulator 4. Shift Instr. Tech. 4. Painter
5. Sheetmetal Mechanic 5. Powerhouse 5. Railroad
 Electrician Mechanic
6. Millwright Rubber Wkr. 6. Powerhouse
 Instrument
 Technician
7. Leadburner & Fiberglass Worker 7. Watchmaker
8. Utilities Mechanic
9. Air Conditioning Utility Mechanic
10. Blacksmith
11. Garage Mechanic
12. Shift Mechanic
13. Powerhouse Insulator
14. Utility Welder
15. Machinist
16. Water & Steam Service Operator