927 F.2d 604
 137 L.R.R.M. (BNA) 2832
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL UNION NO.
89, Affiliated with the International Brotherhood
of Teamsters, Chauffeurs, Warehousemen
and Helpers of America,
Plaintiff-Appellee,
v.
PEYTON'S, A DIVISION OF THE KROGER COMPANY, Defendant-Appellant.
 No. 89-6496.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1991.
 
 On Appeal from the United States District Court for the Western District of Kentucky, 89-00466, Meredith, J.
 W.D.Ky.
 REVERSED.
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges; TODD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Peyton's ("Company"), appeals from the district court's grant of summary judgment to plaintiff, General Drivers Warehousemen and Helpers, Local Union No. 89 ("Union"). In granting summary judgment, the district court vacated an arbitrator's award in favor of the Company. For the following reasons, we reverse the judgment of the district court and reinstate the arbitrator's award.
 
 
 2
 Ardeana Collard, an employee of the Company since 1974, worked as a stocker in its warehouse. In June 1987, she injured her back while lifting a carton and went on unpaid sick leave pursuant to the collective bargaining agreement ("CBA") between the Company and the Union. She remained off work until October 5, 1987, when she returned to light duty for five days as permitted by Company policy, but after that interim, she was unable to return to her regular work as a stocker, which required lifting up to thirty pounds and repeated bending and stooping. Collard went back on unpaid sick leave until December 8, 1987, at which time she returned to her regular work. She reinjured herself shortly after the shift began and has not returned to work.
 
 
 3
 In June 1988, she delivered to the Company a note slip from a Dr. Loeb, which stated that Collard could not lift over ten pounds or repetitively bend or stoop. Dr. Loeb suggested that she could possibly stock the cosmetics line, and he later confirmed in writing that she would probably never be able to work without restriction. Although, according to the Company, Collard was eligible for workers' compensation benefits, she did not file for them.
 
 
 4
 Collard and representatives from the Union and the Company met to discuss her situation. The Company said it had considered her for the position of stocker for the cosmetics product line, but that in that position she would still be subject to temporary transfers between departments. Since she could not be transferred between departments and could not perform her old job, the Company maintained that it had no jobs suitable for her. Because the Company took the position that Collard could not remain on unpaid leave indefinitely, it terminated her employment.
 
 
 5
 The Union filed a grievance claiming that the termination violated explicit provisions of the CBA which entitled Collard to remain on unpaid leave. Applicable portions of the agreement provide:
 
 ARTICLE 8
 Leaves of Absence
 
 6
 .............................................................
 
 
 7
 ...................
 
 
 8
 * * *
 
 
 9
 Section 5. An employee who is required to be off work due to illness or injury verified in writing by a medical doctor shall be granted a leave of absence without pay by the Employer and the terms of such leave shall not exceed one (1) year and shall be renewable for additional periods up to one (1) year each.
 
 
 10
 .............................................................
 
 
 11
 ...................
 
 
 12
 * * *
 
 
 13
 The sick or injured employee shall retain and accumulate seniority during such leave of absence in accordance with Article 5, Section 9 of this Agreement. Such employee shall be required, as a condition of continuing such leave of absence up to one (1) year and on renewals, to submit to the Employer at least every four (4) months after leave begins the statement of a medical doctor verifying his inability to return to work....
 
 
 14
 * * *
 
 
 15
 * * *
 
 ARTICLE 5
 Seniority
 
 16
 .............................................................
 
 
 17
 ...................
 
 
 18
 * * *
 
 
 19
 Section 9. An employee who is compelled to be off work due to illness or injury, verified in writing by a competent medical doctor, shall retain previously accumulated seniority and shall continue to accumulate seniority for the duration of such incapacitating illness or injury provided, however, in no event shall he retain previously accumulated seniority or accumulate seniority if (1) he accepts a final settlement or award under Workmen's Compensation law unless after receipt of such lump sum settlement or award, the employee is fully qualified and able to perform the full range of job duties assigned to him and is given clearance to return to work by a medical doctor of the Company's selection, or (2) engage in gainful employment during the term of such illness or injury or (3) when the duration of such illness or injury equals or exceeds his accumulated seniority prior to such illness or injury, whichever is less. (Emphasis added.)
 
 
 20
 The grievance was submitted to arbitration pursuant to the CBA which provided that the arbitrator had "no power to add to, subtract from, change or modify any of the terms of this Agreement." The arbitrator's opinion denying the grievance includes this language:
 
 
 21
 On the surface, it would appear that the language of Article 5, Section 9 would protect the grievant in this case, since she has not accepted any final settlement under Workmen's Compensation. However, it would appear that the obvious purpose of the provision is to protect the injured employee who is off work during a period of recuperation when there is expectation that he will be able to return to work. It is not reasonable that an employee could delay indefinitely filing for a settlement and thereby avoid separation when it is unlikely that he or she will be able to resume the full duties required by the Employer. While the arbitrator realizes he cannot change the language of the contract, it is not uncommon for arbitrators to interpret the contract in a way that is consistent with the intent of the parties and in a way that does not provide an unreasonable result....
 
 
 22
 For the Company to justify its separation of Mrs. Collard, it must have sufficient evidence that Mrs. Collard was unable to return to work. Such evidence comes primarily from Dr. Loeb.... It is accepted by both parties that Mrs. Collard is unable to return to the job of stocker.
 
 
 23
 The Union filed an action to vacate the arbitration award, and its motion for summary judgment was referred to a magistrate, who concluded that the arbitrator exceeded his authority by ignoring express language of the agreement. The magistrate reasoned that Article 5 of the contract provided that Collard would continue to accumulate seniority unless specific enumerated events occurred; that none of the enumerated events had occurred; and that by limiting the period in which Collard could accumulate seniority, the arbitrator exceeded his authority. The district court accepted the recommendation of the magistrate without additional comment.
 
 
 24
 On appeal, the Union defends the district court's order by contending that the arbitrator exceeded his authority by imposing an additional limitation on retaining unpaid leave status that is not expressly provided for in the agreement. It follows then, says the Union, that the arbitrator's award did not draw its essence from the CBA.
 
 
 25
 The Arbitration Act, at 9 U.S.C. Sec. 10, provides that an arbitrator's award may be vacated upon the application of any party to the arbitration:
 
 
 26
 (a) Where the award was procured by corruption, fraud, or undue means.
 
 
 27
 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
 
 
 28
 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 
 
 29
 (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 
 
 30
 While the Act permits vacation of awards where an arbitrator has exceeded his authority, the standard of judicial review is very narrow.
 
 
 31
 Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract....
 
 
 32
 United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 37-38 (1987) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).
 
 
 33
 "[T]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had final say on the merits of the awards." United Steelworkers of America v. Enterprise Corp., 363 U.S. at 599. Resort to the courts from an arbitrator's decision is not an "appeal" from the arbitrator's reading of the CBA--instead, it serves as a safety valve designed to assure that the arbitrator does not exceed his authority.
 
 
 34
 An arbitrator's decision will be upheld "as long as it 'draws its essence from the collective bargaining agreement' and is not merely 'his own brand of industrial justice.' " Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).
 
 
 35
 An award fails to draw its essence from the collective bargaining agreement when it (1) conflicts with the express terms of the agreement; (2) imposes additional requirements that are not expressly provided in the agreement; (3) lacks rational support or cannot be rationally derived from the terms of the agreement; and (4) is based on general considerations of fairness and equity rather than the precise terms of the agreement. Cement Division, Nat'l Gypsum Co. (Huron) v. United Steelworkers of America, AFL-CIO-CLC, Local 135, 793 F.2d 759, 766 (6th Cir.1986) Thus, an award may be said to draw its essence from a collective bargaining agreement when it is based upon the CBA and includes only permissible constructions of CBA language, as opposed to those that are arbitrary, capricious, or clearly baseless. So long as the arbitrator's award draws its essence from the CBA, the parties are bound by his decision because they agreed in advance to be bound. Upon comparing his decision with the CBA, we conclude that the arbitrator acted within his authority by reasonably construing ambiguous terms in the CBA in order to fashion an award which draws its essence from the CBA.
 
 
 36
 It is inescapable that the arbitrator based his decision upon his reading of the contract. He was confronted with the undisputed fact that Collard had a permanent disability and would never be able to perform her former job. He was required to look to the CBA to see how Collard's situation and the Company's response to it fit into the language of the CBA. He was faced with at least two competing interpretations of the CBA. The Union argued that Article 5, Section 9, permitted an employee to remain on unpaid leave status indefinitely, regardless of his or her intention or ability to return to work. On the other hand, the Company contended that the CBA was intended to protect only those employees who would be able to return to work or who were in doubt as to whether they would be able to return to work. Rather than looking only to Article 5, Section 9, the arbitrator read the contract as a whole and examined the effect of applicable provisions when read together.
 
 
 37
 Since the grievance involved termination of Collard's unpaid leave of absence, it is logical that one would look first to Article 8, the provision on "Leaves of Absence." Article 8, Section 5, describes the circumstances under which an employee who is required to be off work due to illness or injury will receive a leave of absence, and says that an employee who is granted a leave of absence "shall retain and accumulate seniority during such leave of absence in accordance with Article 5, Section 9, of [the] agreement." Article 8, then, refers one to Article 5 for details on seniority rights while on leave. Article 5 states that it is applicable to "[a]n employee who is compelled to be off work due to illness or injury," and then proceeds to tell how and when an employee can accumulate seniority while off work.
 
 
 38
 Although it is not our function to assess the merits of the arbitrator's interpretation, it is apparent that his view of the CBA's language is a permissible one. There is no reason to assume that Article 5 overrides Article 8, or that it must be read in isolation. Indeed, one can argue that Article 8 takes precedence over Article 5, under the circumstances before us, since one must first be found to be entitled to leave under Article 8 before he can turn to Article 5 for a definition of the leave's implications on seniority rights; not the other way around. Viewing the two sections in context, one certainly can maintain that it makes little sense to say that an employee may remain on unpaid leave indefinitely because he or she is entitled to seniority. And, certainly, it was reasonable for the arbitrator to construe the terms "leave of absence," "off work," and "unpaid leave" as referring to an "injured employee who is off work during a period of recuperation when there is an expectation that he will be able to return to work." In an employment context, the "off work" language in Articles 5 and 8 connotes temporary, not permanent, disability, since one who is "off work" expects to return. Accordingly the arbitrator's reading of the CBA was permissible, whether or not we might be inclined to read it another way.
 
 
 39
 Because the arbitrator was arguably construing the CBA, we reverse the order of the district court and remand this cause with instructions to reinstate the arbitrator's award.
 
 
 40
 NATHANIEL R. JONES, Judge, concurring.
 
 
 41
 Although I concur with the majority, I do so with some reservations. Namely, as Judge Martin recently stated in Lattimer-Stevens Co. v. United Steelworkers, 913 F.2d 1166, 1170 (6th Cir.1990) (Martin, J., concurring), "the review of arbitration decisions is a standardless enterprise." At some point, I think this court must attempt to clarify the standard by which appellate courts review the decisions of arbitrators. Currently, the standard of review is so ambiguously deferential as to constitute a virtual "rubber-stamp" of the arbitrator's decision.
 
 
 42
 Like the Lattimer-Stevens case, however, the case before us does not present us with the appropriate foundation from which to launch a successful attempt to clarify the Misco standard. All in all, the arbitrator's decision here should be affirmed. Therefore, I concur.
 
 
 
 *
 The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation