144 F.3d 898
 158 L.R.R.M. (BNA) 2331, 135 Lab.Cas. P 10,166
 KUHLMAN ELECTRIC CORPORATION, Plaintiff-Appellee,
v.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW); Local
No.1772 International Union, United Automobile, Aerospace
And Agriculture Implement Workers of America, Defendants-Appellants.
 No. 97-5546.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 22, 1998.
Decided May 21, 1998.
 
 George J. Miller, Wyatt, Tarrant & Combs, Lexington, KY, Eric Hennemdinger (argued and briefed), Shawe & Rosenthal, Baltimore, MD, for Plaintiff-Appellee.
 Herbert Segal (argued and briefed), John Christopher Sanders, Segal, Isenberg, Sales, Stewart, Cutler & Tillman, Louisville, KY, for Defendants-Appellants.
 Before: GUY, GILMAN, and GODBOLD*, Circuit Judges.
 GILMAN, J., delivered the opinion of the court, in which GUY and GODBOLD, JJ., joined, with GUY, J. (p. 13), also delivering a separate concurring opinion.
 OPINION
 GILMAN, Circuit Judge.
 
 
 1
 Kuhlman Electric Corporation ("Kuhlman") brought an action in the district court under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate arbitration awards rendered in favor of International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and its Local No. 1772 (collectively "UAW"). The district court, on cross-motions for summary judgment, ruled in favor of Kuhlman and entered judgment accordingly. For the reasons set forth below, we REVERSE the judgment of the district court and REMAND the case for further proceedings.
 
 I. BACKGROUND
 
 2
 Kuhlman designs and manufactures electrical transformers. At the time of the events in question, Kuhlman operated plants in Versailles, Kentucky ("Versailles"), Indian Trails, North Carolina ("Indian Trails"), and Crystal Springs, Mississippi ("Crystal Springs"), where distribution transformers, instrument transformers, and power transformers, respectively, were manufactured. UAW is the exclusive collective-bargaining representative of Kuhlman's production and maintenance employees at Versailles ("the employees").
 
 
 3
 In early 1994, Kuhlman and UAW were involved in negotiations with respect to a proposed collective-bargaining agreement offered by Kuhlman as a replacement to an agreement scheduled to expire on February 28, 1994. The proposed agreement contained certain features, described as "lean manufacturing concepts and the working group concept," which Kuhlman anticipated would contribute to greatly increased productivity and profitability. Because UAW suspected that adoption of those features would result in a loss of jobs, UAW advised Kuhlman that it would not recommend ratification of the proposed agreement to the employees. In an effort to alleviate UAW's concerns, Kuhlman stated that ratification of the proposed agreement might lead to some portion of the Indian Hills instrument-transformer production being transferred to Versailles. In response, UAW offered to recommend ratification of the proposed agreement in return for a written promise that Kuhlman would add a minimum of 30 new jobs at Versailles. On February 26, 1994, Graham Beare, Kuhlman's President and Chief Executive Officer, wrote the employees a letter ("the Beare letter") providing in relevant part as follows:
 
 
 4
 Ratification and active support for the new collective bargaining agreement is an important first step in creating a manufacturing environment that will allow each of us to achieve our goals.
 
 
 5
 In consideration for the acceptance and ongoing support of lean manufacturing principles as expressed in the new Labor Agreement, Kuhlman will commit to adding by September 1, 1994 or sooner a minimum of thirty (30) new jobs to the Versailles manufacturing operation. Further, Kuhlman will commit that no employee will be laid off as a result of productivity improvements obtained through our lean manufacturing efforts....
 
 
 6
 (emphasis added). UAW thereafter recommended ratification of the proposed agreement ("the Agreement") and the employees concurred. The Agreement became effective on February 28, 1994 and expired on March 1, 1997.
 
 
 7
 The Agreement set forth a four-step grievance procedure. Section 28 of the Agreement ("Section 28"), which allowed for final and binding arbitration of unsettled grievances, provided in relevant part as follows:
 
 
 8
 In the event no settlement can be reached through the above procedure, the grievance may be referred to an impartial arbitrator ... The decision of the arbitrator shall be final and binding on the Company, the Union, and the employee or employees involved ... The arbitrator shall have authority only with respect to a grievance which involves a claim that a specific section of the Agreement has been violated. he/she [sic] shall have no authority to add to or subtract from or modify the terms of the Agreement, nor as to any matter on which the Agreement reserves exclusive rights to the Employer....
 
 
 9
 (emphasis added) Furthermore, Section 3 of the Agreement ("Section 3") provided in relevant part as follows:
 
 
 10
 Subject only to any limitations stated in this Agreement, the Union recognizes that the Employer retains the exclusive right to manage its business, including, but not limited to, the right to determine the number and location of its plant, departments and jobs ... to determine the products to be manufactured, the number and location of machine and tool equipment and other facilities ... The Employer also retains the right to hire new employees; to determine the extent to which the plant, departments, or jobs shall operate or be curtailed; to direct the working force; to transfer or lay off employees because of lack of work ... The matters contained in this Section are not subject to the grievance or arbitration procedures of this Agreement, except only as to any limitations specifically stated in this Agreement.
 
 
 11
 (emphasis added).
 
 
 12
 By October of 1994, Kuhlman had added nearly 50 instrument-transformer employees at Versailles. While the instrument-transformer business was operating well, Kuhlman's distribution-transformer business experienced a severe slowdown because of market conditions in the last quarter of 1994. Under the circumstances, Kuhlman decided to lay off 24 of its distribution-transformer employees. The seniority provision of the Agreement entitled the laid-off employees to displace Versailles employees with less seniority on jobs that the senior employees were qualified to perform. Because it felt that the instrument-transformer work was essential to profitability and could not be operated productively with an unstable workforce, Kuhlman sought UAW's agreement to protect the newly transferred instrument-transformer employees from displacement by senior employees laid-off from distribution-transformer jobs. Kuhlman advised that if the instrument-transformer employees were not so protected, it would transfer the instrument-transformer business to Crystal Springs. Notwithstanding Kuhlman's ultimatum, UAW refused to grant the requested concession. In November of 1994, Kuhlman began transferring the instrument-transformer equipment to Crystal Springs. Upon learning that Kuhlman would reduce the number of instrument-transformer jobs at Versailles below 30, UAW filed a grievance. In support of the grievance, UAW relied upon Kuhlman's commitment as set forth in the Beare letter. After Kuhlman denied the grievance, UAW sought arbitration under Section 28.
 
 
 13
 The arbitrator sustained UAW's grievance by way of an opinion and award ("the award") rendered on April 30, 1996. In so doing, the arbitrator determined that upon ratification of the Agreement, the Beare letter "became binding and enforceable just as any other Agreement provision." The arbitrator also construed the Beare letter's commitment "to adding ... a minimum of thirty (30) new jobs" as requiring that Kuhlman retain the added jobs for the duration of the Agreement, so long as the work was needed. Accordingly, the arbitrator concluded that Kuhlman violated its commitment by "transferring the Instrument Transformer equipment, jobs and work from Versailles to the Crystal Springs, MS plant." As a remedy, the arbitrator directed that "[t]o the extent that the Company has orders for Instrument Transformers which require employment of a minimum of 30 employees, such employment must be assigned at the Versailles plant for the term of the current Labor Agreement." Furthermore, to ensure compliance with the award, the arbitrator expressly retained jurisdiction over the matter until the expiration of the Agreement on March 1, 1997.
 
 
 14
 In May of 1996, Kuhlman filed an action in the district court to vacate the award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging that the arbitrator exceeded his authority in rendering the award. UAW thereafter filed an answer and counterclaim to enforce the award. The parties subsequently filed cross-motions for summary judgment. In January of 1997, before the district court ruled upon the pending cross-motions, UAW requested that the arbitrator conduct a hearing on the issue of back pay for those employees whose positions Kuhlman had improperly transferred to Crystal Springs. Kuhlman objected to UAW's request on the basis that the arbitrator lacked continuing jurisdiction "unless and until the parties jointly requested that he hear and resolve any disputes regarding his earlier award." The arbitrator, in spite of Kuhlman's objection and without conducting a hearing, issued a supplemental opinion and award on February 21, 1997, directing that Kuhlman provide $1,605,744 in back pay ("the supplemental award"). In calculating that figure, the arbitrator employed the following approach:
 
 
 15
 [T]he reference period of liability is the one hundred and eight (108) week period from January 31, 1995 through February 28, 1997. The lowest paid hourly job of the three jobs on the Instrument Transformer Operation is Operator ($12.39 per hour). On a 40 hour per week basis an operator earns $495.60. Calculated on the same basis, the total wages that would have been earned by 30 employees each week is $14,868.00. That amount per week for the 108 weeks in the reference period results in a total liability of [$1,605,744].
 
 
 16
 In March of 1997, Kuhlman moved for leave to amend its complaint to include allegations that the arbitrator exceeded his authority in rendering the supplemental award, and to request that the supplemental award be vacated along with the initial award. UAW thereafter filed an amended answer and counterclaim to enforce both awards. On April 9, 1997, Kuhlman filed a supplemental motion for summary judgment, arguing that the district court should vacate the supplemental award along with the initial award.
 
 
 17
 On April 15, 1997, less than one week after Kuhlman filed its supplemental motion and before UAW could file a response, the district court granted Kuhlman's motion for leave to amend its complaint, granted Kuhlman's motions for summary judgment, and denied UAW's motion for summary judgment. In a judgment entered on the same date, the district court vacated both arbitration awards and dismissed UAW's counterclaim. UAW now appeals from that judgment.
 
 II. ANALYSIS
 A. Standard of Review
 
 18
 This court reviews de novo a district court's grant of summary judgment. E.E.O.C. v. Prevo's Family Market, 135 F.3d 1089, 1093 (6th Cir.1998). Pursuant to Fed.R.Civ.P. 56(c), summary judgment shall be rendered forthwith if a court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
 
 
 19
 "Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). When reviewing a decision rendered by an arbitrator, courts play a limited role. Id. "It is the arbitrator's construction [of a collective bargaining agreement] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). So long as an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38, 108 S.Ct. 364.
 
 
 20
 Nevertheless, an arbitrator's award must "draw its essence" from a collective-bargaining agreement, and thus "cannot simply reflect the arbitrator's own notions of industrial justice." Id. An arbitration award fails to draw its essence from a collective-bargaining agreement "when (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement." Dallas & Mavis Forwarding Co. v. Local Union No. 89, 972 F.2d 129, 134 (6th Cir.1992) (quoting Cement Divisions, National Gypsum Co. v. United Steelworkers of America, 793 F.2d 759, 766 (6th Cir.1986) (citations omitted)).
 
 B. The Initial Award
 
 21
 The district court entered summary judgment in favor of Kuhlman on the basis that the arbitrator had exceeded his authority in rendering the initial award. Although the district court agreed with the arbitrator's determination that the Beare letter constituted a provision of the Agreement, it held that the arbitrator's ruling that the Beare letter obligated Kuhlman to retain the jobs added to Versailles for the duration of the Agreement failed to draw its essence from the Agreement. In so holding, the district court determined that the award imposed upon Kuhlman an additional requirement not expressly provided for in the Agreement. Furthermore, the district court determined that the initial award conflicted with other terms of the Agreement by infringing upon exclusive management rights which Kuhlman expressly reserved under Sections 3 and 28.
 
 
 22
 On appeal, UAW asserts that because the Beare letter constituted a provision of the Agreement, the arbitrator's determination that Kuhlman was obligated to retain the added jobs for the Agreement's three-year duration (so long as they were needed) drew its essence from the Agreement. In support of its position, UAW argues that the Beare letter, as with any other provision of the Agreement, became part of the three-year contract between the parties. UAW thus contends that the arbitrator did not impose an additional term, as the district court determined, but simply applied the general three-year commitment which the parties had already agreed upon to the new provision.
 
 
 23
 Kuhlman does not challenge on appeal the district court's threshold conclusion that the Beare letter constitutes a provision of the Agreement. Rather, Kuhlman asserts that the initial award fails to draw its essence from the Agreement because the Beare letter, while containing a commitment to add jobs, contains no commitment to maintain such jobs for any particular length of time. Kuhlman therefore contends the arbitrator's determination that Kuhlman committed to retaining a minimum of 30 jobs in Versailles for the entire term of the Agreement imposed an additional requirement not expressly provided for in the Agreement. Furthermore, Kuhlman asserts that the arbitrator's determination conflicts with the Agreement's express terms by infringing upon a prerogative that Kuhlman expressly reserved under Section 3.
 
 
 24
 We are satisfied that the arbitrator's award draws its essence from the Agreement. Again, it is "the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contact is different from his." Enterprise Wheel, 363 U.S. at 599, 80 S.Ct. 1358. In the present matter, the arbitrator construed the Beare letter as requiring that Kuhlman maintain the 30 or more jobs which Kuhlman committed to adding in Versailles for the entire term of the Agreement, subject only to customer demand for the instrument transformers.
 
 
 25
 In light of the events giving rise to the issuance of the Beare letter, such a construction seems perfectly reasonable. UAW had insisted upon the Beare letter's commitment to add at least 30 jobs to Versailles as a condition for recommending ratification of the proposed agreement to the employees. UAW therefore had a reasonable expectation that any jobs added to Versailles under Kuhlman's commitment would remain in Versailles for the duration of the Agreement, at least so long as such work was needed. In fact, it seems unreasonable to assume that Kuhlman would be free to transfer the jobs at its sole discretion any time after the employees ratified the Agreement. Under these circumstances, we are satisfied the arbitrator's award did not impose upon Kuhlman an additional requirement not expressly provided for in the Agreement. See Dallas & Mavis, supra, 972 F.2d at 134.
 
 
 26
 Moreover, we are satisfied that the initial award does not conflict with an express term of the Agreement. Section 3 provides that Kuhlman's retention of certain exclusive management rights is subject to "any limitations specifically stated in this Agreement." Because the Beare letter constituted a provision of the Agreement, the commitment contained therein as construed by the arbitrator would constitute a "limitation" for purposes of Section 3. Accordingly, the district court erroneously determined that the initial award infringed upon Kuhlman's exclusive management rights.
 
 C. The Supplemental Award
 
 27
 Kuhlman contends that the supplemental award should be vacated because, in rendering the award, the arbitrator improperly: (1) exercised continuing jurisdiction without the consent of both parties; (2) interpreted Kuhlman's jurisdictional objection as a refusal to participate in a hearing on the issue of back pay; (3) failed to conduct a hearing on the issue of back pay, thereby violating Kuhlman's right to due process; (4) based the award of back pay on the unjustified assumption that 30 employees were performing the instrument-transformer work at all times; and (5) computed damages without allowing for mitigation by interim earnings or unemployment compensation.
 
 
 28
 Kuhlman filed its supplemental motion to vacate the arbitrator's back-pay award on April 9, 1997. On April 15, 1997, less than one week later, the district court granted that motion without having considered it on the merits. Instead, the district court relied upon its granting of Kuhlman's initial motion for summary judgment on the same date:
 
 
 29
 In light of the Court's disposition of the parties' cross-motions for summary judgment, and its finding in favor of Plaintiff, it follows that the arbitrator's second award must likewise be vacated. Accordingly, Plaintiff's ... supplemental motion for summary judgment will be granted.
 
 
 30
 UAW submitted neither an opposition to Kuhlman's supplemental motion nor its own supplemental motion, presumably because the district court's expeditious disposition of Kuhlman's supplemental motion deprived UAW of time to properly prepare either one.
 
 
 31
 While it appears that Kuhlman's arguments in support of vacating the supplemental award may have merit, this matter is not ripe for appellate review because the arguments raised by Kuhlman were neither briefed by UAW nor considered on their merits by the district court. Accordingly, we will remand the disposition of Kuhlman's motion to vacate the back-pay award for briefing and consideration on the merits.
 
 III. CONCLUSION
 
 32
 For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.
 
 
 33
 GUY, Circuit Judge, concurring.
 
 
 34
 I concur in the reversal, but would want to make clear that for me what saves the arbitrator's decision is his implied acknowledgement that Kuhlman did not have to maintain the 30 positions under any and all circumstances. The arbitrator indicated that if the jobs were not necessary, they did not have to be maintained. The transfer of work here was precipitated by a refusal on the part of the Union to depart from the seniority system set forth in the collective bargaining agreement. They were under no obligation to do so.
 
 
 35
 Kuhlman concedes it would not have made the transfer had the Union agreed to the seniority provision modifications. The management rights clause of the collective bargaining agreement did not give management the right to unilaterally insist on a change in the seniority provisions of the contract.
 
 
 36
 Although in my view Kuhlman's request was a reasonable one under the circumstances, it is not within the purview of our limited review to consider this fact in deciding whether or not to enforce the arbitration award.
 
 
 
 *
 The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation