803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WESTVACO CORPORATION, Plaintiff-Appellant
v.
UNITED PAPERWORKERS' INTERNATIONAL UNION, LOCAL UNION NO.
680; LEWIS HICKS, PRESIDENT; KENNETH RAGAN, CHIEF STEWARD;
INDIVIDUALLY AND AS AGENTS OF LOCAL UNION NO. 680, UNITED
PAPERWORKERS INTERNATIONAL UNION, AND AS REPRESENTATIVES OF
MEMBERS OF LOCAL UNION NO. 680, UNITED PAPERWORKERS'
INTERNATIONAL UNION; AND JAMES HAWES, INDIVIDUALLY AND AS A
MEMBER OF LOCAL UNION NO. 680, UNITED PAPERWORKERS'
INTERNATIONAL UNION, Defendants-Appellees.
 No. 85-5777.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1986.
 
 BEFORE: KRUPANSKY, NELSON, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff/appellant Westvaco Corporation ("the Company") appealed the district court judgment which enforced an arbitrator's decision in favor of the defendant unions and union officials (collectively referred to as "the Union").
 
 
 2
 On November 28, 1983, James Hawes ("Hawes"), a Company employee and Union member, telephoned his foreman to advise him that he would not report for work on that date because he was experiencing some swelling of his leg. The foreman thereupon told Hawes that he was being suspended, and possibly discharged, for excessive absenteeism. Immediately thereafter, Hawes received a letter which notified him of a two week suspension and noticed him of a meeting to discuss his possible discharge.
 
 
 3
 The meeting was convened on December 3, 1983 in the personnel manager's office and was attended by Hawes and representatives of the Union and the Company. Subsequent to the meeting, the Company decided to discharge Hawes and mailed him a certified letter confirming the discharge. Hawes' wife acknowledged receipt of the certified letter on December 8, 1983.
 
 
 4
 Approximately three weeks thereafter, an officer of the local Union made inquiry of the personnel manager to determine the disposition of the Hawes case. At that time, the personnel manager informed the union that the Company had discharged Hawes and had notified him of the discharge by written notice effective December 8, 1983, which action was not grieved within five days as required by Article XXXIV, Paragraph 4, of the collective bargaining agreement:
 
 
 5
 In the event the above discussions fail to settle the difference and a grievance arises over the interpretation, application, or alleged violation of any of the provisions of this Agreement, it shall be taken up promptly through the following steps except that no grievance will be considered if it is presented more than five (5) days after the cause of such grievance becomes known or could reasonably be expected to have been known.
 
 
 6
 The agreement further provided that the grievance should be "reduced to writing and signed by the employee and by his or her Department Steward."
 
 
 7
 Based upon the collective bargaining agreement, the personnel manager explained that he would neither accept nor discuss a grievance arising as a result of the discharge. On January 11, 1984, representatives of the international and local union formally requested that the Company accept a written grievance. The Company agreed to accept the untimely grievance, subject to its continuing objection as to its late filing. The grievance was processed but was denied by the Company at each stage of the procedure because of the procedural noncompliance.
 
 
 8
 The dispute was submitted to arbitration on July 12, 1984. The arbitrator ruled that although it was conceded by the Union that it failed to comply with the procedures mandated by the agreement, the untimely filing, under the circumstances, could be excused. Concluding that the matter was thus procedurally arbitrable, the arbitrator addressed the merits of the dispute and determined that Hawes' discharge breached the collective bargaining agreement.
 
 
 9
 The Company subsequently filed an action in the federal district court seeking to have the arbitration award vacated. The district court initially noted that the lack of a record of the arbitration hearing precluded a truly intelligent decision. However, the court decided that, given the deference due to arbitrator's decisions, it should assume that there was some evidence in the record to support the arbitrator's disposition that the matter was procedurally arbitrable. The court therefore enforced the arbitrator's award. This appeal ensued.
 
 
 10
 The law is well-settled that the resolution of labor disputes through arbitration is strongly favored and that courts have been mandated to afford arbitrators' determinations great deference. See e.g., W.R. Grace and Company v. Local 759, United Rubber Workers, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). The deference due an arbitrator's award, however, is not without limitation:
 
 
 11
 [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 12
 United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). See also Industrial Mutual Association v. Amalgamated Workers, 725 F.2d 406, 411-412 (6th Cir. 1984)("An arbitrator is not free to decide whether or not he likes the terms of a written collective bargaining agreement . . . nor can he ignore plain and unambiguous provisions of the agreement . . . An award without any logical basis in the contract or in the evidence cannot be sustained.")
 
 
 13
 This circuit has recently enumerated four situations in which an arbitrator's award is invalid for failure to draw its essence from the collective bargaining agreement:
 
 
 14
 An award fails to derive its essence from the agreement when (1) an award conflicts with express terms of the collective bargaining agreement . . . (2) an award imposes additional requirements that are not expressly provided in the agreement . . . (3) an award is without rational support or cannot be rationally derived from the terms of the agreement . . . and (4) an award is based on several considerations of fairness and equity instead of the precise terms of the agreement.
 
 
 15
 National Gypsum v. United Steelworkers, 3er F.2d 4er, No. 85-1206 (6th Cir. June 19, 1986) slip op. at 14 (citations omitted).
 
 
 16
 A review of the arbitrator's decision in the instant case readily discloses that it does not draw its essence from the agreement. The agreement clearly mandates that a grievance "shall be taken up promptly" and that "no grievance shall be considered if it is presented more than five (5) days after the cause of action of such grievance becomes known or could reasonably be expected to have been known" (emphasis added). Since it is undisputed that the grievance was not filed by the Union until approximately three weeks after Hawes' discharge, it was not timely filed and thus the arbitrator was without authority under the agreement to consider it.[1] Although the arbitrator "may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." Detroit Coil Company v. International Association of Machinists & Aerospace Workers, Lodge #82, 594 F.2d 575, 579 (6th Cir. 1979)(citations omitted). Because the arbitrator's award disregarded plain and unambiguous provisions of the agreement, it failed to draw its essence from that agreement and cannot stand.
 
 
 17
 For the foregoing reasons, the arbitrator's award is hereby VACATED and REVERSED.
 
 
 
 [1]
 The Union's arguments in support of the arbitrator's award are without merit. While the Union asserts that the December 5, 1983 meeting in the personnel department lulled it into believing the dispute had been grieved and that the grievance procedure was underway, a review of the facts discloses that the Union's contention was incredible. It is undisputed that Hawes' discharge did not take place until December 8, 1983. Since the cause of any grievance could not reasonably have been known until December 8, the Union could not justifiably have believed that a formal grievance had been filed before that date. The Union's argument that the lack of a record somehow constrains a court's standard of review is similarly without merit. Transcripts of arbitration hearings are not generally made and represent the exception rather than the rule. See, F. Elkouri and E. Elkouri, How Arbitration Works, 217-220 (1981). To suggest that the lack of a record somehow insulates an arbitrator's decision from judicial review would be tantamount to permitting an arbitrator unbridled discretion to rule as he pleases so long as no record of the proceeding is made. Finally, the Union's allegation that the arbitrator's procedural ruling was based upon a factual determination which would be disclosed by the record if a record of the proceeding had been made is sheer sophistry. A reading of the arbitrator's decision plainly reveals that his reasoning has its essence within facts that are apparent from the available record and not upon any underlying, undisclosed circumstances. The arbitrator simply credited the Union's bare conclusory allegation that Hawes had been wronged by covert company action