*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MICHIGAN FAMILY RESOURCES, INC.,

*Plaintiff-Appellee,*

v.

SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 517M,

*Defendant-Appellant.*

No. 04-2564

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00019—Gordon J. Quist, District Judge.

Submitted: December 8, 2005

Decided and Filed: January 27, 2006

Before: DAUGHTREY, GILMAN, and SUTTON, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Mary Ellen Gurewitz, SACHS WALDMAN, Detroit, Michigan, Howard F. Gordon, MICHIGAN PUBLIC EMPLOYEES, SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 517M, Lansing, Michigan, for Appellant. Timothy J. Ryan, MILLER JOHNSON, Grand Rapids, Michigan, for Appellee.

The court delivered a PER CURIAM opinion. SUTTON, J. (pp. 6-10), delivered a separate concurring opinion.

---

**OPINION**

---

PER CURIAM. Local 517M of the Service Employees International Union challenges the decision of the district court to vacate an arbitration award in its favor. Because the award does not draw its essence from the collective bargaining agreement, we affirm.

I.

Michigan Family Resources (MFR) runs the federal Headstart Program that serves Kent County, which lies in western Michigan. Local 517M of the Service Employees International Union represents some of MFR's employees. On behalf of its members, the union negotiated a collective

1

bargaining agreement with MFR that entitled its members to annual wage increases. For our purposes, the agreement contains four pertinent provisions.

Article 35(1) of the agreement provides:

Bargaining unit members will receive the same cost of living increases paid to other MFR employees pursuant to the directive of MFR's funding source. The parties understand that the timing and amount of any such increase is entirely dictated by the funding source.

JA 43. The "funding source" mentioned in this provision, the parties agree, refers to the federal government.

Article 35(2) provides:

During the fall semester of each program year, bargaining unit members will be reviewed and will be considered for a merit increase. . . . MFR will guarantee at least that for each bargaining unit employee the sum of any [cost-of-living increase] paid during the year and the merit increase will be as follows: 2002 - 4%; 2003 - 2.5%; 2004 - 3.5%. For example, if the [cost-of-living] increase for 2004 is 2.5%, effective on September 1, 2004 bargaining unit members will receive at least an additional 1.0%.

JA 43–44.

Article 5(c) requires the parties to arbitrate any disputes that they cannot resolve on their own. The arbitrator, it says, "shall have full authority to render a decision which shall be final and binding upon both parties and the employees, except that the arbitrator shall not have authority to change, alter, amend, or deviate from the terms of this collective bargaining agreement in any respect." JA 27. This article further provides that "[i]f the Union requests arbitration, the parties shall choose an arbitrator by selecting from the following list through the alternating strike method:" Mario Chiesa, Mark Glazer, William Daniel, George Roumell, and Lamont Stallworth. *Id*.

And Article 34 provides that the agreement "expresses the understanding of the parties and it will not be changed, modified, or varied, except by written instrument signed by duly authorized agents of the party hereto," and that "[t]here are no past practices which are binding upon the parties." JA 43.

In May 2003, MFR notified the union employees that they would receive a 2.5% increase for 2003—1.5% from the "funding source" (*i.e.*, the federal government), 1% from MFR—while non-union employees would receive a 4% increase for the year. While the 2003 pay increase for union employees satisfied the collective bargaining agreement's minimum requirement for that year (2.5%), the union claimed that the agreement required parity between union and non-union employees in the payment of cost-of-living increases. The union accordingly filed a grievance against MFR. In accordance with the agreement, the parties engaged an arbitrator, Mark Glazer, to resolve the dispute.

On December 10, 2003, the arbitrator issued a written decision in favor of the union. As he saw the matter, the question was "whether Article 35 requires MFR to provide parity in [cost-of-living] payments for its [union] employees when non-Union employees receive higher [ ] payments." Arb. Op. at 2. On this point, the arbitrator reasoned, Article 35 was not entirely clear. While it required union members to "receive the same payments from the federal funding source as other employees," it did not directly address "the cost of living increases from other sources, such as from

the Employer." *Id*. at 7. The arbitrator then noted that before and after the adoption of the collective bargaining agreement, MFR granted the same cost-of-living increase to all employees, regardless of union affiliation. *Id*. at 8. MFR never held merit reviews, he added, and in a 2002 memo (dealing with pay increases for the first year of the collective bargaining agreement) it characterized the entire wage increase to union employees as a cost-of-living increase. "I am persuaded," the arbitrator then concluded, "that [Article 35] becomes ambiguous because of the Employer's prior decision to characterize both its individual payment and its payment from the federal funding source as [cost of living]." *Id*. at 8. Having identified this ambiguity, he resolved it in light of the employer's practice of granting identical cost-of-living increases to all employees and therefore awarded union members an equivalent 4% cost-of-living increase.

On January 9, 2004, MFR filed a complaint in federal court seeking to vacate the award, premising subject-matter jurisdiction on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. On November 10, 2004, the district court granted MFR's motion for summary judgment, holding that "the Arbitrator's award does not draw its essence from the [collective bargaining agreement] because the Arbitrator considered evidence to aid in construing the [collective bargaining agreement] when, in fact, no construction was necessary." D. Ct. Op. at 6. "[T]he Arbitrator," the court concluded, "went beyond the express terms of the [collective bargaining agreement] by imposing additional requirements upon the parties and considering past practices, which are specifically disclaimed by the [collective bargaining agreement's] waiver provisions." *Id*. This appeal followed, which we review de novo. *Beacon Journal Publ'g Co. v. Akron Newspaper Guild*, 114 F.3d 596, 599 (6th Cir. 1997).

II.

Although the standard for reviewing arbitration awards is "one of the narrowest standards of judicial review in all of American jurisprudence," *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514–15 (6th Cir. 1999) (internal quotation omitted), "our review is not toothless when an arbitrator's award disregards the collective bargaining agreement and its terms," *Beacon Journal Publ'g Co*., 114 F.3d at 599. When an award "draws its essence from the collective bargaining agreement," we will uphold it; when it does not, we will vacate the award. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (internal quotation omitted). An award does not "draw its essence" from the collective bargaining agreement, we repeatedly have said, when any of the following is true: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Sterling China Co. v. Glass Workers Local No. 24*, 357 F.3d 546, 556 (6th Cir. 2004) (internal quotation omitted); *see Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir. 1986).

Applying these standards, the district court determined that the arbitrator's award did not draw its essence from the collective bargaining agreement. We agree.

By its terms, Article 35(1) of the agreement addresses the requirements for government-funded cost-of-living increases, providing that "[b]argaining unit members will receive the same cost of living increases paid to other MFR employees pursuant to the directive of MFR's funding source." Whatever cost-of-living increase that "MFR's funding source" (the federal government) provides in a given year, in other words, must be provided equally to union and non-union members alike. But the agreement does not spell out any requirements for *employer-funded* cost-of-living increases. And Article 35(2) addresses merit increases and guarantees a minimum raise for all union employees and yet says nothing about parity between union and non-union members. Each fall, it says, "bargaining unit members will be reviewed and will be considered for a merit increase." JA 43. It then "guarantee[s] at least that for each bargaining unit employee the sum of any [cost-of-living increase] paid during the year and the merit increase will be as follows: 2002 - 4%; 2003 - 2.5%; 2004 - 3.5%." JA 43–44. According to the terms of this provision, union members are guaranteed a minimum increase each year, regardless of what the federal government's cost-of-living increase is, while non-union members receive no such guarantee.

The terms of the two provisions, it seems to us, admit of one proper interpretation. While the agreement requires parity in government-funded cost-of-living increases, it does not require parity in employer-funded cost-of-living increases or in merit increases (an odd concept at any rate) and therefore does not require parity in the sum of the cost-of-living and merit increases. The parties reached agreement on the minimum amounts owed to union employees, but they tied that agreement to set percentages, *not* to what MFR happened to pay non-union employees in a given year. *See* Article 35(2), JA 43–44. Faced with an agreement that gives union employees the same government-funded cost-of-living increases as non-union employees and that assures union employees a minimum salary increase for each of the three years of the agreement, the arbitrator had no authority to impose an additional term on the employer, namely that *any* cost-of-living increase provided to non-union employees, no matter how funded, must be provided to union employees. When the arbitrator required parity in employer-funded salary increases, he thus imposed an "additional requirement[] not expressly provided for in the agreement," one that "conflict[ed] with express terms of the agreement," *Sterling China Co.*, 357 F.3d at 556, and one that accordingly did not draw its essence from the agreement.

Given this clarity in the agreement, the arbitrator also had no basis for consulting evidence of the parties' custom of wage increases and no basis for invoking that custom as a source in construing the agreement. "[P]ast practice or custom should not be used to interpret or give meaning to a provision or clause of the collective bargaining agreement that is clear and unambiguous." *Beacon Journal Publ'g Co.*, 114 F.3d at 601; *see also Allied Indus. Workers v. Gen. Elec. Co.*, 471 F.2d 751, 756–57 (6th Cir. 1973) ("[W]here the meaning of the clause is clear, no construction is necessary."). Disregarding this more pertinent custom, the arbitrator committed a severe order-of-operations error, reasoning that the language of Article 35 *becomes* ambiguous" because of MFR's past salary-increase practices. JA 55 (emphasis added). Under these circumstances, the district court rightly concluded that the award did "not draw its essence from the [collective bargaining agreement] because the Arbitrator considered evidence to aid in construing the [collective bargaining agreement] when, in fact, no construction was necessary." D. Ct. Op. at 6.

In reaching this conclusion, we are not unmindful of appellant's argument that an arbitration award should not be vacated merely because the arbitrator commits a legal error in construing the collective bargaining agreement. As the concurrence points out, the argument is a compelling one and Supreme Court precedent provides some support for it. But as the concurrence also points out, this circuit's four-part test—resting in part on these same Supreme Court precedents—has been in place for 20 years and binds us here. *See Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir. 1986). If appellant is to have success on this front, in short,

it will have to be through a petition for rehearing en banc, one that the three of us would be open to consider in this case or in any other case presenting the issue.

III.

For these reasons, we affirm.

———————————

**CONCURRENCE**

———————————

SUTTON, Circuit Judge, concurring. Nearly a half-century ago, the Supreme Court issued three watershed opinions designed to end the federal courts' hostility to labor-arbitration awards. *See United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960). In one of these decisions, the Court stated that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *Enter. Wheel*, 363 U.S. at 596. Five years ago, the Court repeated the instruction: So long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotation omitted). Between these bookend rulings, the Court has frequently reminded lower courts that an arbitration award may not be vacated merely because the arbitrator failed to resolve the merits correctly. *See, e.g.*, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (stating that "a court should not reject an award on the ground that the arbitrator misread the contract"); *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 764 (1983) (stating that "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one" and that a court is "not entitled to review the merits of the contract dispute").

When an employer and union agree to submit questions of contract interpretation to an arbitrator, our "limited" function thus is to "ascertain[] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Am. Mfg. Co.*, 363 U.S. at 567–68. If the contract makes the dispute an arbitrable one, "the courts . . . have no business . . . determining whether there is particular language in the written instrument which will support the claim." *Id.* at 568. Unless "procured by the parties through fraud or through the arbitrator's dishonesty," *Misco*, 484 U.S. at 38, or unless the arbitrator merely has "dispense[d] his own brand of industrial justice," *Enter. Wheel*, 363 U.S. at 597, an arbitrator's award premised on his construction of the contract permissibly "draws its essence from the collective bargaining agreement" and should be upheld, *id.*

This near-absolute deference to the decision of the arbitrator respects the mutual benefit of the parties' bargain. "It is the arbitrator's construction," not the federal courts' construction, after all, that "was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 599; *see Misco*, 484 U.S. at 37–38 ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept."). "Regardless of what our view might be of the correctness of [the arbitrator's] contractual interpretation, the Company and the Union bargained for that interpretation," *W.R. Grace*, 461 U.S. at 765—and that interpretation must be upheld even if time and further review show that the parties in the end have bargained for nothing more than error.

While we have called this standard of review "one of the narrowest standards of judicial review in all of American jurisprudence," *see, e.g.*, *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 593 (6th Cir. 2004) (internal quotation omitted), I can think of none narrower. Consider the spectrum of standards applied by federal appellate courts, whether reviewing the work of federal juries, federal district courts, federal and state executive-branch agencies, state courts (through habeas corpus review) or federal and state legislative bodies (through judicial review). Federal-court

review of arbitration awards of course has no parallel to the dice-loading skepticism of strict and intermediate scrutiny or the fresh review that characterizes the de novo standard. So long as the "function" of a reviewing court is "confined . . . to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract," *Am. Mfg. Co.*, 363 U.S. at 568, and so long as we must tolerate even "serious" legal and factual errors committed by arbitrators who were "arguably construing . . . the contract," *Garvey*, 532 U.S. at 509, I should think it difficult to identify a standard of review that requires more federal-court modesty than this one. Plain error, clear error, abuse of discretion, *Chevron* deference, AEDPA deference, substantial evidence and reasonableness all would seem to have more teeth than federal-court review of arbitration awards. In each setting, the standard asks more of the body under review than simply whether they were "arguably" performing their job. Even rational-basis review demands more than whether the legislature "arguably" was legislating. It may be true that the federal courts have developed "more verbal formulas for the scope of appellate review . . . than there are distinctions actually capable of being drawn in the practice of appellate review." *United States v. Boyd*, 55 F.3d 239, 242 (7th Cir. 1995). But no matter what the relative toothlessness of arbitration review happens to be in relation to these other deferential forms of review, the "verbal formula" given to us by the Supreme Court is one that demands we respect in word and deed the delegation of decision-making authority chosen by the contracting parties.

If we are to take seriously what the Supreme Court has said in this area and what it has done (to my knowledge it has not authorized the vacation of a labor-arbitration award since 1960), I do not understand how we can alter the parties' delegation of decision-making authority in this case merely because one of those parties (the employer) now thinks that the arbitrator botched the interpretation of the contract. At most, the employer has shown that the arbitrator misapprehended the meaning of the contract and misapprehended the rules for construing contracts. As the district court rightly reasoned and as our per curiam opinion correctly agrees, the collective bargaining agreement required parity only as to cost-of-living increases from the federal government, said nothing about employer-funded cost-of-living increases and established the minimum increases that union employees could expect in a given year, increases tied in no way to the increases given to non-union employees. Read together, the provision of limited parity requirements and the provision of express minimum-salary requirements for union employees strongly imply the exclusion of an overarching parity requirement between union and non-union employees. And that implication is strong enough that the arbitrator should not have pinned his interpretation of the contract on the parties' practices in implementing it. If a district court in a diversity case had interpreted the contract in this manner, no one would doubt that we should correct the error.

But that of course is not the point. An arbitrator selected by the parties, not a federal district court judge, interpreted this contract, and that makes all the difference. We have here none of the tell-tale signs for vacating an award: bias by the arbitrator, a conflict of interest, a transparent effort to "dispense his own brand of industrial justice," or a dispute that is not arbitrable. Instead we have an arbitrator who certainly was "arguably construing" the contract and who just as certainly made a "serious error" in construing the contract, a confluence of circumstances that does not invest us with authority to "overturn [the] decision." *Garvey*, 532 U.S. at 509. Throughout his ten-page opinion, the arbitrator references, quotes and analyzes the contract. Even the flaw in his analysis does not disprove that he was attempting to construe the contract. "[T]he above language," he says, "becomes ambiguous because of the Employer's prior decision to characterize both its individual payment and its payment from the federal funding source as [a cost-of-living increase]." Arb. Op. at 8. Whether the "becomes" phrase was a slip of the pen or a slip in thought, it was still "the above language"—the contract language—that he was trying to figure out. Even the district court characterized these efforts as construction: "[T]he Arbitrator considered evidence to aid *in construing* the [agreement] when, in fact, no construction was necessary." D. Ct. Op. at 6 (emphasis added). All that happened here is that the arbitrator committed a legal error, a serious legal error

to be sure, but an error of interpretation nonetheless, which does not authorize us to vacate the award.

What makes this case difficult is not figuring out what the contract means and it is not applying the Supreme Court's directives in this area; it is faithfully applying our circuit's four-part test for determining whether to vacate an arbitration award. Twenty years ago, the court attempted to summarize the four settings in which the circuit had vacated an award because it failed to "draw[] its essence" (*Enter. Wheel*, 363 U.S. at 597) from the contract:

> An award fails to derive its essence from the agreement when (1) an award conflicts with express terms of the collective bargaining agreement, *see, e.g.*, *Grand Rapids Die Casting Corp. v. Local Union No. 159, U.A.W.*, 684 F.2d 413 (6th Cir. 1982); (2) an award imposes additional requirements that are not expressly provided in the agreement, *see, e.g.*, *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154 (6th Cir. 1982) . . . ; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, *see, e.g.*, *Timken Co. v. United Steelworkers of America*, 482 F.2d 1012 (6th Cir. 1973); and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement, *see, e.g.*, *Local 342, United Auto Workers v. T.R.W., Inc.*, 402 F.2d 727 (6th Cir. 1968).

*Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir. 1986). If a dissatisfied party to an arbitration can satisfy any one of these tests, we have held, the award should be vacated. *Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922, 929 n.3 (6th Cir. 2000). And in each decade since our decision in *Cement Divisions*, we have consistently applied this four-part test. *See, e.g.*, *Appalachian Reg'l Healthcare, Inc. v. United Steelworkers, Local 14398*, 245 F.3d 601, 604–05 (6th Cir. 2001); *Kuhlman Elec. Corp. v. Int'l Union, UAW*, 144 F.3d 898, 902 (6th Cir. 1998); *Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 600 (6th Cir. 1997); *Dallas & Mavis Forwarding Co. v. Gen. Drivers, Local No. 89*, 972 F.2d 129, 134 (6th Cir. 1992); *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir. 1987).

This formulation, I respectfully believe, has made it easier to vacate an arbitration award on the merits than the Supreme Court meant it to be. The Supreme Court itself has told us when an arbitration award "draws its essence" from a contract. The same Court decision that gave us the "draws its essence" language, *Enter. Wheel*, 363 U.S. at 597, gave us this language ("[t]he proper approach to arbitration under collective bargaining agreements" is to "refus[e] . . . to review the merits of an arbitration award," *id.* at 596) and gave us just one illustration of when an award may be vacated on the merits (when the arbitrator has "dispense[d] his own brand of industrial justice," *id.* at 597). Since then, barring "fraud" or the "arbitrator's dishonesty," *Misco*, 484 U.S. at 38, the Court has said that federal courts should uphold arbitration awards so long as the arbitrator is "arguably construing" the contract, even when that construction results in a "serious error," *Garvey*, 532 U.S. at 509. In view of the Court's many descriptions of this standard, I am not sure it helps matters to add our own gloss to it, and still less to do so through a four-part test that can be satisfied if any one of its formulations can be met.

Nor is it clear to me how the first two parts of our test—(1) whether the award conflicts with "express terms" of the agreement or (2) whether the award "imposes additional requirements that are not expressly provided in the agreement"—can be reconciled with Supreme Court precedent. Whether an award conflicts with the "express terms" of the contract or "imposes additional requirements" not provided in the contract, to begin with, are two sides of the same coin. And both sides of that coin seem to be in tension with *Garvey*'s directive that a "serious error" in interpreting

a contract does not provide an independent ground for vacating an arbitration award so long as the arbitrator was "arguably construing" the contract. 532 U.S. at 509. After all, when will it not be the case that a losing party to an arbitration can characterize a "serious" legal error in construing a contract as an award that conflicts with "express terms" of the contract (or "imposes additional requirements" not provided in the contract)? Only an exceedingly unimaginative attorney would shy away from that argument. And from a court's perspective, what exactly is the difference between making a "serious" legal error in construing a contract and "imposing an additional requirement" not provided in the contract? The distinction is lost on me. I would prefer to focus on the "serious error"/"arguably construing" language of the Court, and go one step further—say that close cases should be resolved in favor of the presumption that the arbitrator was "arguably construing" the contract. *See Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 187 (7th Cir. 1985) ("We have gone on at such length because we want to make clear that we take seriously the twin propositions that (1) the reviewing court's function (whether the district court's, or this court's) is at an end when it concludes that what the arbitrator did was interpretation of the contract, and (2) when in doubt the court must find that it was interpretation."). No doubt, this view will permit only the most egregious awards to be vacated. But it is a view that seems consistent with the parties' bargain and one whose flaws at any rate can be corrected by the remedy of choosing better arbitrators.

What started as a rule requiring the courts to "refuse to review the merits of an arbitration award" and to tolerate "serious" legal errors as long as the arbitrator is "arguably construing" the contract became a rule focused only on whether an award in the abstract "draws its essence from the collective bargaining agreement" and turned into a rule that an award may be vacated if it conflicts with the "express terms" of the agreement. Not unlike the children's game of "telephone," the current message differs from the original message—and indeed may well convey the opposite message. One cannot, in short, respect the requirement that we vacate arbitration awards that do not follow the "express terms" of the agreement without slighting the requirement that we tolerate "serious" legal errors in arbitration awards.

The problem, moreover, is not simply one of language. Repeated incantations of our test seem to have led us to vacate a surprising number of arbitration awards. While the Supreme Court to my knowledge has not vacated a single labor-arbitration award since 1960, my chambers' survey of published Sixth Circuit decisions since 1986 reveals that we have vacated 29% (10 out of 34) of labor-arbitration awards that we have reviewed on merits-based grounds. *See* Appendix. The pattern does not change when one looks at unpublished opinions, as we have vacated 25% of those awards (19 out of 75) on similar grounds. *See id.* And all of this has happened at the same time that the Supreme Court has said that "courts will set aside the arbitrator's interpretation of what their agreement means only in rare instances." *E. Associated Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57, 62 (2000). Who among the practicing bar would not appeal an award that has a one-in-four chance of winning?

These statistics have not escaped the notice of arbitration scholars. Referring to our *Cement Divisions* test, one author commented that "the Sixth Circuit's . . . variant of the essence construct sweeps away all pretense of judicial deference to the contract interpretation and application decisions of the arbitrator." Stephen L. Hayford, *Unification of the Law of Labor Arbitration and Commercial Arbitration: An Idea Whose Time Has Come*, 52 Baylor L. Rev. 781, 821 (2000). Another scholar discussed the test, then noted that "the courts which follow the rule of the First, Fifth, and Sixth Circuits are saying that it is for the court, not the arbitrator, to decide what the express terms mean." David E. Feller, *Taft and Hartley Vindicated: The Curious History of Review of Labor Arbitration Awards*, 19 Berkeley J. Emp. & Lab. L. 296, 303 (1998). Still another discussed the test, then concluded that "the Sixth Circuit serves as an example of the circuits' attempted end run around the Supreme Court's rulings." Anna Knull, Recent Developments,

American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l: *The Fifth Circuit Dispenses Its Own Brand of Justice in Reviewing a Labor Arbitration Award*, 78 Tul. L. Rev. 2305, 2308 (2004). *See also* Feller, *Taft and Hartley Vindicated*, 19 Berkeley J. Emp. & Lab. L. at 302 ("One man's essence may be another man's (or a court's) nonsense!").

At some point, it seems to me, the full court should reconsider the Supreme Court's directives in this area or at least explain how our four-part test respects them. That seems particularly imperative since we have many cases that spell out the four-part test, then proceed to recite and follow the Supreme Court's more deferential language. *See, e.g.*, *Way Bakery*, 363 F.3d at 593 (referring to four-part test and reciting that we should uphold arbitration awards even when they contain a "serious" legal error); *Tenn. Valley Authority v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999) (same); *Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104, 1107 (6th Cir. 1993) (same). Because we continue to refer to both this deferential and non-deferential language in our cases, one could perhaps say that this is all simply a matter of emphasis, a "you like potato, I like potato" problem. Maybe so. But in view of the nearly 27% vacation rate in our labor-arbitration cases, our holdings show that the four-part test has been anything but deferential in application. Because I am bound by our four-part test and our practice in applying it, I feel obliged to concur in the decision vacating this arbitration award—even though this case strikes me as presenting precisely the kind of "serious error" that the Supreme Court has expected we would permit arbitrators to make.

**APPENDIX**

**Published Opinions/Upholding Awards**

*Int'l Bhd. of Elec. Workers, Local 1842 v. Cincinnati Elecs. Corp.*, 808 F.2d 1201 (6th Cir. 1987) (reviewing arbitrator's interpretation of a forfeiture provision and holding that the award drew its essence from the agreement).

*Eberhard Foods, Inc. v. Handy*, 868 F.2d 890 (6th Cir. 1989) (reviewing arbitrator's interpretation of a just-cause provision and holding that the award drew its essence from the agreement).

*Hawks v. City of Pontiac*, 874 F.2d 347 (6th Cir. 1989) (reviewing arbitrator's interpretation of promotion provision and holding that the award drew its essence from the agreement).

*Local 120, Int'l Molders & Allied Workers Union v. Brooks Foundry, Inc.*, 892 F.2d 1283 (6th Cir. 1990) (reviewing arbitrator's interpretation of two remedial provisions and holding that the award drew its essence from the agreement).

*Dixie Warehouse & Cartage Co. v. Gen. Drivers, Local Union No. 89*, 898 F.2d 507 (6th Cir. 1990) (reviewing arbitrator's interpretation of a discharge provision and holding that the award drew its essence from the agreement).

*Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136 (6th Cir. 1990) (reviewing arbitrator's interpretation of vacation and grievance provisions and holding that the award drew its essence from the agreement).

*Interstate Brands Corp. v. Chauffeurs Local Union No. 135*, 909 F.2d 885 (6th Cir. 1990) (reviewing arbitrator's interpretation of just-cause and grievance provisions and holding that the award drew its essence from the agreement).

*Lattimer-Stevens Co. v. United Steelworkers, Sub-Dist. 5*, 913 F.2d 1166 (6th Cir. 1990) (reviewing arbitrator's interpretation of a longevity provision and holding that the award drew its essence from the agreement).

*Dallas & Mavis Forwarding Co. v. Gen. Drivers, Local Union No. 89*, 972 F.2d 129 (6th Cir. 1992) (reviewing arbitrator's interpretation of "cancelled by the shipper" provision and holding that the award drew its essence from the agreement).

*Action Distrib. Co. v. Int'l Bhd. of Teamsters Local 1038*, 977 F.2d 1021 (6th Cir. 1992) (reviewing arbitrator's interpretation of employee-transfer provisions and holding that the award drew its essence from the agreement).

*Monroe Auto Equip. Co. v. Int'l Union, UAW, Monroe Equip. Co., Unit of Local 878*, 981 F.2d 261 (6th Cir. 1992) (reviewing arbitrator's interpretation of "under the influence in a detectable manner" provision and holding that the award drew its essence from the agreement).

*Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104 (6th Cir. 1993) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Mercy Mem'l Hosp. Corp. v. Hosp. Employees' Div. of Local 79*, 23 F.3d 1080 (6th Cir. 1994) (reviewing arbitrator's interpretation of a just-cause provision and holding that the award drew its essence from the agreement).

*Kuhlman Elec. Corp. v. Int'l Union, UAW*, 144 F.3d 898 (6th Cir. 1998) (reviewing arbitrator's interpretation of a provision requiring the employer to add jobs and holding that the award drew its essence from the agreement).

*Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767 (6th Cir. 1998) (reviewing arbitrator's interpretation of outsourcing provision and holding that the award drew its essence from the agreement).

*AK Steel Corp. v. United Steelworkers*, 163 F.3d 403 (6th Cir. 1998) (reviewing arbitrator's interpretation of a neutrality agreement and holding that the award drew its essence from the agreement).

*Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510 (6th Cir. 1999) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Gen. Truck Drivers, Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434 (6th Cir. 1999) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*DBM Techs., Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651 (6th Cir. 2001) (reviewing arbitrator's interpretation of medical-leave provisions and holding that the award drew its essence from the agreement).

*Int'l Bhd. of Teamsters, Local Union No. 1224 v. ABX Air, Inc.*, 274 F.3d 1023 (6th Cir. 2001) (reviewing arbitrator's interpretation of random-search provision and holding that the award drew its essence from the agreement).

*Detroit Typographical Union, Local 18 v. Detroit Newspaper Agency*, 283 F.3d 779 (6th Cir. 2002) (reviewing arbitrator's interpretation of job-guarantee provisions and holding that the award drew its essence from the agreement).

*Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497 (6th Cir. 2003) (reviewing arbitrator's interpretation of a cardinal-infractions list and holding that the award drew its essence from the agreement).

*Sterling China Co. v. Glass Workers Local 24*, 357 F.3d 546 (6th Cir. 2004) (reviewing arbitrator's interpretation of compensation provisions and holding that the award drew its essence from the agreement).

*Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590 (6th Cir. 2004) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

**Published Opinions/Vacating Awards**

*Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85 (6th Cir. 1987) (reviewing arbitrator's interpretation of the term "offense" and holding that the award—which defined offense to mean only violations for which punishment was imposed—did not draw its essence from the agreement).

*Int'l Bhd. of Elec. Workers, Local 429 v. Toshiba Am., Inc.*, 879 F.2d 208 (6th Cir. 1989) (reviewing arbitrator's interpretation of a provision subjecting employees to immediate discharge for engaging in strikes and holding that the award—which reinstated employees based on the employer's oral agreement—did not draw its essence from the agreement).

*AP Parts Co. v. Int'l Union, UAW*, 923 F.2d 488 (6th Cir. 1991) (reviewing arbitrator's interpretation of the interrelationship of two contracts and holding that the award—which relied on the prior contract instead of the later contract—did not draw its essence from the correct agreement).

*Ohio Edison Co. v. Ohio Edison Joint Council*, 947 F.2d 786 (6th Cir. 1991) (reviewing arbitrator's interpretation of a last-chance agreement and holding that the award—which did not enforce the agreement and thus failed to follow a Sixth Circuit opinion that held such agreements were enforceable—did not draw its essence from the agreement).

*Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge No. 2770 v. Lourdes Hosp., Inc.*, 958 F.2d 154 (6th Cir. 1992) (reviewing arbitrator's interpretation of scheduling provisions and holding that the award—which required the employer to notify employees of scheduling changes—did not draw its essence from the agreement).

*Ficks Reed Co. v. Local Union 112 of the Int'l Union*, 965 F.2d 123 (6th Cir. 1992) (reviewing arbitrator's interpretation of a collective bargaining agreement and a strike-replacements agreement and holding that the award—which unduly relied on the collective bargaining agreement—did not draw its essence from the agreements).

*Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596 (6th Cir. 1997) (reviewing arbitrator's interpretation of vacation provisions and holding that the award—which

imposed additional requirements not expressly stated in the contract—did not draw its essence from the agreement).

*Int'l Bhd. of Elec. Workers, Local 175 v. Thomas & Betts Corp.*, 182 F.3d 469 (6th Cir. 1999) (reviewing arbitrator's interpretation of voluntary-quit provision and holding that the award—which imposed additional terms not expressly found in the contract—did not draw its essence from the agreement).

*Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922 (6th Cir. 2000) (reviewing arbitrator's interpretation of grievance provisions and holding that the award—which failed strictly to apply the time-limit provisions of the contract—did not draw its essence from the agreement).

*Appalachian Reg'l Healthcare, Inc. v. United Steelworkers, Local 14398*, 245 F.3d 601 (6th Cir. 2001) (reviewing arbitrator's interpretation of the employer's right to fix hours and holding that the award—which failed to respect management's practice of using part-time employees—did not draw its essence from the agreement).

## Unpublished Opinions/Upholding Awards

*Premium Bldg. Prods. Co. v. United Steelworkers, Local Union No. 8869*, No. 85-3749, 1986 WL 17284 (6th Cir. July 15, 1986) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*S. Labor Union, Local 295 v. Gatliff Coal Co.*, Nos. 86-5136, 86-5173, 1987 WL 36692 (6th Cir. Mar. 6, 1987) (reviewing arbitrator's interpretation of a subcontracting provision and holding that the award drew its essence from the agreement).

*Mastrobuono v. Local Union No. 673, Int'l Bhd. of Elec. Workers*, No. 86-3674, 1987 WL 44583 (6th Cir. Sept. 1, 1987) (reviewing arbitrator's interpretation of job-referral provisions and holding that the award drew its essence from the agreement).

*United Food & Commercial Workers Local No. 1099 v. Kroger Co.*, No. 87-3242, 1988 WL 4459 (6th Cir. Jan. 26, 1988) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*Armco, Inc. v. Armco Employees Indep. Fed'n, Inc.*, No. 87-3311, 1988 WL 24948 (6th Cir. Mar. 23, 1988) (reviewing arbitrator's application of a provision that the parties had not argued was applicable and holding that the award drew its essence from the agreement).

*Gen. Foods Corp. v. United Cereal Workers, Local 374*, No. 87-1649, 1988 WL 54838 (6th Cir. June 1, 1988) (reviewing arbitrator's interpretation of the word "plant" and holding that the award drew its essence from the agreement).

*Adamo v. Hotel Workers Union Local 24*, No. 87-2213, 1988 WL 116875 (6th Cir. Nov. 2, 1988) (reviewing arbitrator's resolution of an employment dispute and holding that the award reflected due consideration and should not be vacated).

*Joseph & Feiss Co. v. Amalgamated Clothing & Textile Workers Union*, No. 87-3832, 1988 WL 118049 (6th Cir. Nov. 8, 1988) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Borman's Inc. v. United Food & Commercial Workers Int'l Union, Local 876*, Nos. 87-1909, 87-1948, 1988 WL 123727 (6th Cir. Nov. 21, 1988) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*Agipcoal USA, Inc. v. Int'l Union, UMWA*, No. 88-6122, 1989 WL 66484 (6th Cir. June 21, 1989) (reviewing arbitrator's interpretation of grievance provisions and holding that the award drew its essence from the agreement).

*Dist. 30, United Mine Workers v. Agipcoal USA, Inc.*, No. 88-6416, 1989 WL 142066 (6th Cir. Nov. 27, 1989) (reviewing arbitrator's interpretation of the term "customarily" and holding that the award drew its essence from the agreement).

*Monsanto Co. v. Local Union No. 229*, Nos. 89-1230, 89-1231, 1990 WL 3490 (6th Cir. Jan. 19, 1990) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*Int'l Union, UAW Local No. 12 v. Sharon Mfg. Co.*, No. 89-3521, 1990 WL 8722 (6th Cir. Feb. 6, 1990) (reviewing arbitrator's choice of remedies and holding that the award drew its essence from the agreement).

*Parke-Davis Div., Warner Lambert Co. v. Local 7-176 Oil Workers*, No. 89-1987, 1990 WL 78183 (6th Cir. June 11, 1990) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Gen. Drivers, Local Union No. 89 v. Peyton's*, No. 89-6496, 1991 WL 23530 (6th Cir. Feb. 25, 1991) (reviewing arbitrator's interpretation of leave-of-absence and seniority provisions and holding that the award drew its essence from the agreement).

*Worthams v. Bd. of Educ. of Memphis City Sch.*, No. 90-5936, 1991 WL 119266 (6th Cir. July 1, 1991) (reviewing arbitrator's interpretation of grievance provisions and holding that the award drew its essence from the agreement).

*Grimm v. Copperweld Steel Co.*, No. 91-3657, 1992 WL 34368 (6th Cir. Feb. 25, 1992) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*Freeman Constr. Co. v. Structural Iron Workers' Local No. 17*, No. 91-3455, 1992 WL 56751 (6th Cir. Mar. 23, 1992) (reviewing arbitrator's interpretation of the scope of the contract and holding that the award drew its essence from the agreement).

*Louisville Graphic Commc'ns, Local N-619 v. Standard Gravure Corp.*, No. 91-5976, 1992 WL 70167 (6th Cir. Apr. 7, 1992) (reviewing arbitrator's interpretation of the phrase "temporary suspension" and holding that the award drew its essence from the agreement).

*Local 3-689 Oil Workers Int'l Union v. Martin Marietta Energy Sys., Inc.*, No. 91-3598, 1992 WL 92732 (6th Cir. May 5, 1992) (holding, on basis of an unpublished district court opinion, that arbitrator's award drew its essence from the agreement).

*Anderson v. UAW Local 36*, Nos. 91-2099, 91-1973, 1992 WL 315080 (6th Cir. Oct. 30, 1992) (reviewing arbitrator's interpretation of contracting-out provisions and holding that the award drew its essence from the agreement).

*Bruno v. United Steelworkers*, No. 92-3342, 1993 WL 2300 (6th Cir. Jan. 6, 1993) (reviewing arbitrator's interpretation of suspension provisions and holding that the award drew its essence from the agreement).

*Quaker Oats Co. v. Int'l Chem. Workers Union*, No. 92-5070, 1993 WL 47199 (6th Cir. Feb. 23, 1993) (reviewing arbitrator's interpretation of severance-pay provisions and holding that the award drew its essence from the agreement).

*Kar Nut Prods. Co. v. Int'l Bhd. of Teamsters, Local 337*, No. 92-2084, 1993 WL 304467 (6th Cir. Aug. 10, 1993) (reviewing arbitrator's interpretation of settlement, management-rights and just-cause provisions and holding that the award drew its essence from the agreement).

*Ginn v. WR Southfield Assocs.*, No. 92-2251, 1993 WL 339705 (6th Cir. Sept. 1, 1993) (reviewing arbitrator's interpretation of scheduling, seniority and just-cause provisions and holding that the award drew its essence from the agreement).

*Detroit Newspaper Agency v. Newspaper Drivers & Handlers, Teamsters Local No. 372*, No. 93-2036, 1994 WL 714343 (6th Cir. Dec. 22, 1994) (reviewing arbitrator's interpretation of a provision that required the employer to assign certain work to a class of employees and holding that the award drew its essence from the agreement).

*Int'l Bhd. of Teamsters v. Executive Jet Aviation, Inc.*, No. 94-3402, 1995 WL 256307 (6th Cir. May 1, 1995) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Int'l Union of Operating Eng'rs, Local 369 v. Office & Prof'l Employees Union, Local 367*, No. 94-5786, 1995 WL 538537 (6th Cir. Sept. 7, 1995) (reviewing arbitrator's interpretation of a

bargaining-unit-membership provision and holding that the award drew its essence from the agreement).

*Cleo Inc. v. United Paperworkers Int'l Union, Local Union 1766*, No. 94-6441, 1995 WL 704191 (6th Cir. Nov. 29, 1995) (reviewing arbitrator's interpretation of a provision making arbitration awards final and binding and holding that the award drew its essence from the agreement).

*Newspaper Drivers & Handlers' Local Union No. 372 v. Detroit Newspaper Agency*, No. 95-2025, 1996 WL 673476 (6th Cir. Nov. 20, 1996) (reviewing arbitrator's interpretation of a provision governing the employer's negotiation with individual employees and holding that the award drew its essence from the agreement).

*Hoover Co. v. Local 1985, Int'l Bhd. of Elec. Workers*, No. 95-4125, 1996 WL 742299 (6th Cir. Dec. 27, 1996) (reviewing arbitrator's interpretation of an unexcused-absence provision and holding that the award drew its essence from the agreement).

*GTE North, Inc. v. Int'l Bhd. Elec. Workers, Local 986*, No. 96-3471, 1997 WL 307172 (6th Cir. June 6, 1997) (reviewing arbitrator's interpretation of temporary-employee provisions and holding that the award drew its essence from the agreement).

*AK Steel Corp. v. United Steelworkers*, No. 96-6727, 1997 WL 650841 (6th Cir. Oct. 17, 1997) (reviewing arbitrator's interpretation of various dispute-resolution agreements and holding that the award drew its essence from the agreements).

*Smith v. Westlake PVC Corp.*, No. 96-6550, 1997 WL 764489 (6th Cir. Dec. 3, 1997) (reviewing arbitrator's interpretation of penalty provisions and holding that the award drew its essence from the agreement).

*Local 2352 Amalgamated Clothing & Textile Workers Union v. Findlay Indus., Inc.*, Nos. 96-4377, 97-3229, 97-3402, 1998 WL 415998 (6th Cir. July 7, 1998) (reviewing arbitrator's interpretation of incentive-pay provisions and holding that the award drew its essence from the agreement).

*Gen. Teamsters Sales & Serv. & Indus. Union Local No. 654 v. Active Transp. Co.*, No. 97-4010, 1999 WL 68674 (6th Cir. Jan. 12, 1999) (reviewing arbitrator's interpretation of the contract to determine whether the employer could transfer work and holding that the award drew its essence from the agreement).

*Dayton Newspapers, Inc. v. Int'l Bhd. of Teamsters, Local 957*, No. 98-3682, 1999 WL 357753 (6th Cir. May 11, 1999) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Witco Corp. v. Oil Workers Int'l Union*, No. 98-5652, 1999 WL 591418 (6th Cir. July 28, 1999) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Paulstra CRC Corp. v. United Steelworkers, Local 49*, No. 98-1688, 1999 WL 777350 (6th Cir. Sept. 21, 1999) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Mead Corp. v. United Paperworkers Int'l Union*, No. 98-4242, 1999 WL 1073684 (6th Cir. Nov. 16, 1999) (reviewing arbitrator's interpretation of management-rights provisions and holding that the award drew its essence from the agreement).

*Ormet Primary Aluminum Corp. v. United Steelworkers, Local 5724*, No. 99-3388, 2000 WL 377044 (6th Cir. Apr. 6, 2000) (reviewing arbitrator's interpretation of a contracting-out provision and holding that the award drew its essence from the agreement).

*Allied Mech. Servs., Inc. v. Local 337 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus.*, No. 99-1494, 2000 WL 924594 (6th Cir. June 26, 2000) (reviewing arbitrator's decision that the contract did not provide for job-targeting funds and holding that the award drew its essence from the agreement).

*Serv. Welding v. Int'l Bhd. Boilermakers*, No. 99-5534, 2000 WL 977340 (6th Cir. July 5, 2000) (reviewing arbitrator's interpretation of a just-cause provision and holding that the award drew its essence from the agreement).

*Great Lakes Reg'l Indus. Council of Carpenters v. Overhead Door Corp.*, No. 99-3467, 2000 WL 1033052 (6th Cir. July 19, 2000) (reviewing arbitrator's interpretation of grievance provisions and holding that the award drew its essence from the agreement).

*Eaton Corp. v. Paper Workers Int'l Union, Local 5-334*, No. 00-3111, 2001 WL 427782 (6th Cir. Apr. 17, 2001) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*Pace Local Union 1967 v. Champion Int'l Corp.*, No. 00-3599, 2001 WL 427767 (6th Cir. Apr. 18, 2001) (reviewing arbitrator's reversal of a prior award on the basis of the contract and holding that the new award drew its essence from the agreement).

*Hoover Co. v. Local 1985, Int'l Bhd. of Elec. Workers*, No. 00-3673, 2001 WL 1356149 (6th Cir. Oct. 25, 2001) (reviewing arbitrator's interpretation of grievance provisions and holding that the award drew its essence from the agreement).

*United Paperworkers Int'l Union, Local 1737 v. Inland Paperboard & Packaging, Inc.*, Nos. 00-6252, 01-5010, 2001 WL 1667288 (6th Cir. Dec. 21, 2001) (reviewing arbitrator's interpretation of leave-of-absence and overtime provisions and holding that the award drew its essence from the agreement).

*Dixie Warehouse & Cartage Co. v. Gen. Drivers, Local Union No. 89*, No. 00-5777, 2002 WL 927028 (6th Cir. May 7, 2002) (reviewing arbitrator's interpretation of seniority provisions and holding that the award drew its essence from the agreement).

*Ohio Valley Coal Co. v. Pleasant Ridge Synfuels, LLC*, Nos. 01-3455, 01-3456, 2002 WL 31890927 (6th Cir. Dec. 23, 2002) (reviewing arbitrator's interpretation of the phrase "coal preparation facility" and holding that the award drew its essence from the agreement).

*Highway & Local Motor Freight Employees Local Union No. 667 v. Wells Lamont Corp.*, No. 01-6404, 2003 WL 21540979 (6th Cir. July 7, 2003) (reviewing arbitrator's interpretation of discharge provisions and holding that the award drew its essence from the agreement).

*Mains v. LTV Steel Co.*, No. 00-3282, 2003 WL 22976624 (6th Cir. Dec. 8, 2003) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award drew its essence from the agreement).

*Int'l Chem. Workers Union Council v. RJF Int'l Corp.*, No. 02-4215, 2004 WL 1152152 (6th Cir. May 19, 2004) (reviewing arbitrator's interpretation of back-pay provisions and holding that the award drew its essence from the agreement).

*Highland Mining Co. v. United Mine Workers, Dist. 12*, No. 03-5019, 2004 WL 1595197 (6th Cir. July 14, 2004) (reviewing arbitrator's interpretation of the term "workweek" and holding that the award drew its essence from the agreement).

*Bixby Med. Ctr., Inc. v. Mich. Nurses Ass'n*, No. 03-2451, 2005 WL 1389528 (6th Cir. June 7, 2005) (reviewing arbitrator's interpretation of grievance provisions and holding that the award drew its essence from the agreement).

*DEI, Inc. v. Ohio & Vicinity Reg'l Council of Carpenters*, No. 04-3033, 2005 WL 2108327 (6th Cir. Sept. 1, 2005) (reviewing arbitrator's interpretation of the phrase "general contractor" and holding that the award drew its essence from the agreement).

**Unpublished Opinions/Vacating Awards**

*Westvaco Corp. v. United Paperworkers' Int'l Union, Local No. 680*, No. 85-5777, 1986 WL 17764 (6th Cir. Sept. 15, 1986) (reviewing arbitrator's interpretation of grievance provisions and holding that the award—which failed strictly to apply the provisions' time-limits—did not draw its essence from the agreement).

*United Paperworkers Int'l Union, Local No. 943. v. Wheaton Indus.*, No. 85-6090, 1986 WL 18482 (6th Cir. Dec. 16, 1986) (reviewing arbitrator's interpretation of just-cause provision and holding that the award—which failed to respect a management-rights provision—did not draw its essence from the agreement).

*Magic Chef, Inc. v. Int'l Molders & Allied Workers Union*, No. 87-5046, 1987 WL 39085 (6th Cir. Dec. 3, 1987) (reviewing arbitrator's interpretation of discharge provisions and holding that the award—which improperly resolved the tension between potentially conflicting provisions—did not draw its essence from the agreement).

*United Textile Workers, Local 815 v. BASF Corp.-Fibers*, No. 89-5721, 1990 WL 47468 (6th Cir. Apr. 18, 1990) (reviewing arbitrator's interpretation of a job-assignment provision and holding that the award—which consulted past practice to limit the employer's rights under the provision—did not draw its essence from the agreement).

*Tenn. Valley Auth. v. Salary Policy Employee Panel*, No. 89-6397, 1990 WL 166443 (6th Cir. Nov. 1, 1990) (reviewing arbitrator's interpretation of discharge provisions and holding that the award—which upheld the employee's termination but awarded pay based on the employer's delayed investigation—did not draw its essence from the agreement).

*Mor-Flo Indus., Inc., Chattanooga Div. v. Int'l Bhd. of Elec. Workers*, No. 90-5605, 1991 WL 29202 (6th Cir. Mar. 7, 1991) (reviewing arbitrator's interpretation of leave-of-absence and discharge provisions and holding that the award—which failed to account for an anti-waiver provision—did not draw its essence from the agreement).

*Browning-Ferris Indus. of Tenn., Inc. v. Teamsters Local Union No. 984*, No. 90-5933, 1991 WL 203110 (6th Cir. Oct. 10, 1991) (reviewing arbitrator's interpretation of discharge provisions and holding that the award—which required "just cause" whereas the agreement referred only to "cause"—did not draw its essence from the agreement).

*Wrap v. United Paper Workers Int'l Union, Local Union 1766*, Nos. 92-5031, 92-5032, 1993 WL 84523 (6th Cir. Mar. 24, 1993) (reviewing arbitrator's interpretation of discharge and seniority provisions and holding that the award—which imposed an additional requirement not found in the contract—did not draw its essence from the agreement).

*Voss Steel Employees Union v. Voss Steel Corp.*, Nos. 92-2068, 92-2309, 1994 WL 28610 (6th Cir. Jan. 31, 1994) (reviewing arbitrator's interpretation of a last-chance agreement and holding that the award—which did not follow the last-chance agreement because the union never signed it—did not draw its essence from the agreement).

*Hamilton-Stevens Group, Inc. v. Int'l Union, UAW, Local 1688*, No. 93-3472, 1994 WL 664935 (6th Cir. Nov. 23, 1994) (reviewing arbitrator's interpretation of work-assignment provisions and holding that the award—which unnecessarily consulted past practice—did not draw its essence from the agreement).

*Marathon Oil Co. v. Cylinder Gas Drivers Employees-Local Union No. 283*, No. 97-1780, 1998 WL 702357 (6th Cir. Sept. 25, 1998) (reviewing arbitrator's interpretation of discharge provisions and holding that the award—which failed to equate dischargeable offenses with just-cause offenses—did not draw its essence from the agreement).

*United Food & Commercial Workers Union, Local No. 1099 v. Kroger Co.*, No. 98-3423, 1999 WL 232698 (6th Cir. Apr. 12, 1999) (reviewing arbitrator's interpretation of work-assignment provisions and holding that a portion of the award—which declined to penalize an employer's violation because the penalty would serve no purpose—did not draw its essence from the agreement).

*Gen. Drivers, Local 89 v. Willamette Indus., Inc.*, No. 98-5476, 1999 WL 503465 (6th Cir. July 6, 1999) (reviewing arbitrator's interpretation of just-cause provisions and holding that the award—which failed to respect a management-rights provision—did not draw its essence from the agreement).

*Omnisource Corp. v. United Steelworkers, Local 9130*, No. 98-3603, 1999 WL 552600 (6th Cir. July 26, 1999) (reviewing arbitrator's interpretation of transfer provisions and holding that the award—which failed to respect a management-rights provision—did not draw its essence from the agreement).

*Int'l Union of Elec. Workers v. Hurd Corp.*, Nos. 00-5016, 00-5119, 2001 WL 210578 (6th Cir. Feb. 20, 2001) (reviewing arbitrator's interpretation of vacation-benefits provisions and holding that the award—which unnecessarily consulted past practice—did not draw its essence from the agreement).

*Paper Workers, Local Union No. 5-998 v. LWD, Inc.*, No. 02-5892, 2004 WL 1171342 (6th Cir. May 25, 2004) (reviewing arbitrator's interpretation of grievance provisions and holding that the award—which was inconsistent with evidence indicating that the grievance was not timely—did not draw its essence from the agreement).

*Alken-Ziegler, Inc. v. UAW Local Union 985*, No. 04-1193, 2005 WL 1285746 (6th Cir. May 23, 2005) (reviewing arbitrator's interpretation of the phrase "actually working" and holding that the award—which determined that the phrase was ambiguous—did not draw its essence from the agreement).

*Sterling Fluid Sys. (USA), Inc. v. Chauffeurs Local Union #7*, No. 04-1279, 2005 WL 1653434 (6th Cir. July 12, 2005) (reviewing arbitrator's interpretation of a subcontracting provision and holding that the award—which failed to respect a management-rights provision—did not draw its essence from the agreement).

*Armco Employees Indep. Fed'n Inc. v. AK Steel Corp.*, No. 04-4110, 2005 WL 1993409 (6th Cir. Aug. 17, 2005) (reviewing arbitrator's interpretation of travel-reimbursement provisions and holding that the award—which covered some employees who had not been listed in the grievance—did not draw its essence from the agreement).